[Civ. No. 1334.    Third Appellate District.—May 5, 1915.]

## A. M. ROBERTSON, Appellant, v. H. C. FINKLER et al., Respondents.

WATER-RIGHTS—ACTION TO DETERMINE—SUFFICIENCY OF EVIDENCE.—In this action to determine certain water-rights, it is held that the evidence was sufficient to support the finding that plaintiff was the owner of one-sixth of the waters in question and that the development of certain waters by defendants and their predecessors in estate above the spring from which plaintiff's waters flowed did not affect the flow at that spring.

ID.—CONFLICTING EVIDENCE—APPEAL.—Where the evidence is conflicting but there is substantial evidence to support the findings of the trial court, every substantial conflict must be resolved in favor of the findings.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge.

The facts are stated in the opinion of the court.

Albert Mansfield, for Appellant.

Ross & Ross, for Respondents.

CHIPMAN, P. J.—Plaintiff seeks the judgment of the court that he is the owner of one-sixth of the waters of a certain spring, known as Rock Spring, and restraining defendants from diverting more than two-thirds of the waters of said spring; also directing defendants to remove any obstruction maintained by them which prevents plaintiff from obtaining the use of said one-sixth of said waters; also for

damages in the sum of two thousand five hundred dollars. The findings of fact and conclusions of law were that plaintiff is the owner of an undivided one-sixth interest in said spring and the waters thereof and that defendants are the owners of four-sixths, the remaining one-sixth belonging to O. F. Westphal; that defendants have not nor has either of them diverted any part of the waters of said Rock Spring to which plaintiff is entitled, nor have defendants or either of them interfered in any way with plaintiff's free and unobstructed use of said waters to which plaintiff is entitled nor threatened so to do; that plaintiff has not been damaged "in any way or manner whatsoever by reason of any alleged diversion or obstruction of the said Rock Spring by said defendants, or either of them, or by any act or acts of defendants or either of them, whatsoever." Judgment passed for defendants from which plaintiff appeals under the alternative method.

As respects the question of alleged damages there was no evidence supporting plaintiff's averments and plaintiff makes no claim for damages in his brief. That feature of the case may therefore be dismissed from consideration.

Plaintiff states in his brief: "This matter is one of fact rather than one of law. . . . I do not believe that there is any law entangled in this case. From the testimony and under the admission of the pleadings we are absolutely entitled to one-sixth of 'Rock Spring' wherever that may be, and to one-sixth of the waters flowing therefrom, and whether or not Dr. Taylor or Mr. Finkler made any developments of 'Rock Spring,' we nevertheless would be entitled to our one-sixth of all the waters flowing therefrom."

No question arises as to plaintiff's right to "one-sixth of Rock Spring wherever that may be, and to one-sixth of the waters flowing therefrom," for the evidence so showed and the court so found. The only question in dispute is whether certain water developed by defendants and their predecessors in estate is part of or should have been found by the court to be part of the Rock Spring water.

The land on which Rock Spring and the developed waters were situated are part of a tract of six hundred acres formerly belonging to Jacob Kreiss and are situated in the foot-hills near Redwood City, San Mateo County. After his death, in 1901, the Kreiss Ranch was subdivided. Lot 5 of this subdivision was deeded to Mrs. Hattie Kreiss-Greene, a daughter, subject

to the right appurtenant to the parcel of land marked "Isaac," situated on said lot 5, for an undivided one-third interest in a certain spring known as Rock Spring, with the right to draw the waters thereof and therefrom, over and across said lot 5. Subsequently, the portion of the ranch marked "Isaac" was conveyed by the heirs of Jacob Kreiss to one John Isaac, the deed containing a similar recital to that above referred to in the Greene deed in reference to Rock Spring, and conveying one-third interest in said Rock Spring. Similarly, another portion of the ranch was sold by said heirs to one Ernest Marchand, conveying one-third interest in said Rock Spring, and another portion to Harry R. Fee, who conveyed a one-sixth interest in Rock Spring to plaintiff, who through mesne conveyances became owner, in 1907, of fifteen acres of said land and the said one-sixth of Rock Spring. Before plaintiff had obtained title Marchand conveyed his said land with his right to the spring to John Isaac, who thus became owner of two-thirds of the spring. Subsequently Isaac's land and water-right in the spring passed to Dr. A. Miles Taylor and he sold to defendants. In December, 1908, Mrs. Greene having died, the remaining portion of lot 5, 67.73 acres, upon which Rock Spring was located, was sold at probate sale for four thousand four hundred and fifty dollars, plaintiff and defendants being competitive bidders, and defendants became the purchasers, thus becoming the owners of the upper part of the tract, lot 5, which the evidence showed was valuable only as water bearing land. We find, then, that when this action was commenced plaintiff owned fifteen acres of lot 5 and one-sixth interest in the waters of Rock Spring and defendants owned the fee of the upper portion, 67.73 acres, of lot 5 upon which the spring is located and they also owned the Isaac and Marchand tracts and two-thirds of the waters of said spring.

It appears that a gulch runs through lot 5 with what are referred to as left-hand and right-hand branches. Above the junction of these branches and on the left-hand branch is Rock Spring and on the right-hand branch a spring called Cow Spring.

While Dr. Taylor owned the Marchand and Isaac tracts he, with permission of the owners of the land, constructed a cement tank or receptacle for water at the junction of said two branches of said gulch, about 10 feet square and 3½ feet in depth, for the purpose of a water reservoir. The so-called

"Isaac Pipe Line," mentioned in the complaint and in the testimony, was connected with this tank and conveyed all the water stored therein to the Taylor—now defendants'—residence. By permission of the owner of the land, Taylor carried the water of "Cow Spring" by pipe to this tank. No water from said Cow Creek flowed or flows into or reaches Rock Spring. One fact in controversy is the location of this latter spring with reference to said tank. The court found that it is "located at the base of a large rock situate in the left-hand ravine mentioned in finding III and about forty feet distant above the Taylor tank or receptacle and that the flow of water from said spring is sometimes barely perceptible and does not exceed an average of more than five hundred gallons per day." The witnesses did not agree as to the distance apart of the spring and tank, but there was ample evidence supporting the finding on this fact. As to the quantity of water afforded by the spring, one witness who was familiar with its history testified that at times all its water could have been conveyed through "a wheat straw" and none of the witnesses placed its average flow in ordinary seasons at more than five hundred gallons. Unless the water first developed by Taylor is part of Rock Spring water we do not see that the quantity of water in that spring is very material, for whatever it is the respective rights of the parties to it are not questioned. The court found "that at no time since the construction of said cement tank or receptacle by said A. Miles Taylor did all or any of the water of said Rock Spring flow into said 'Isaac Pipe Line,' nor did the defendants, or either of them, divert or take any or use any part of said water." The evidence is conflicting as to the point where the excavations were made in the sides of the ravine to develop water. There was testimony that it was from 150 to 200 feet above Rock Spring. Witness Woodward drove the tunnels for Dr. Taylor. He testified that he ran two tunnels and found water at a distance of about fifteen feet in the hill; that he ran through formations impervious to water, indicating that the water developed did not and would not otherwise have found its way into the ravine and that he piped the water 200 feet down the ravine to the cement tank which he built to receive it. It has already been stated that the "Isaac Pipe Line" connected this tank with Taylor's now defendants', residence. Witness Bromfield, city engineer of the city of San Mateo and county

surveyor of San Mateo County, who claimed to have had experience as a mineralogist, surveyed and subdivided this tract of land and visited the two water developing tunnels above referred to. He testified that one of the tunnels was 195 feet "from what I understand is shown to be Rock Spring" and "the other is 215 feet. Q. As an expert would you say that any of this water which has been reached by going through this rock some 16 feet, would any of the water there feed the spring which was pointed out to you by Jacob Kreiss? A. I do not think it did." Witness Finkler, one of defendants, testified that he has to continue work in the tunnels to keep up the flow "on account of the clay that comes in there and fills up these cracks and lessens the flow." It was shown that this cement tank stood up above the bottom of the gulch so that, except when the weather was stormy, the water of the gulch coming from the Rock Spring ran around it. "Every storm, of course, it would flow over. Q. But a small stream would flow around it? A. It goes around it. There was a certain amount of flow there." A short distance below this tank was what was called the Fee dam, from which plaintiff received by pipe his share of the water, and he testified that he received a sufficient supply up to 1909 or 1910, which was two years or more after the tunnels were dug. The evidence justified the finding that in developing water, as was shown, some two hundred feet above Rock Spring, it did not affect the flow at that spring. There was evidence tending to controvert this fact and evidence also conflicting in some degree with other facts in the case, but there was some substantial evidence supporting the findings and, under the familiar rule, we must resolve every substantial conflict in the testimony in favor of the findings. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, [134 Pac. 1157].)

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 2, 1915.