[Civ. No. 168. Fourth Appellate District.—December 4, 1930.]

NANNIE J. UNDERHILL, Appellant, v. GUS A. PETERSON, Respondent.

Burton E. Hales for Appellant.

Swing & Wilson for Respondent.

WARMER, J., *pro tem.*—This is an appeal by the plaintiff from a judgment against her in an action to recover damages caused by plaintiff's colliding with the defendant's automobile while she was crossing a public street in the city of Redlands, county of San Bernardino, California. The case was tried without a jury and the court found among other things:

"I.

"The court hereby finds that at the time and place referred to in plaintiff's complaint, one W. E. Holmlund was driving and operating an automobile belonging to the defendant. The court further finds that it is not true that said W. E. Holmlund was driving and operating said automobile in a careless, negligent, and illegal manner. The court further finds that said W. D. Holmlund was then and there driving and operating said automobile in a careful and prudent manner and that the plaintiff then and there ran into and collided with said automobile near the rear right wheel thereof and by reason of such collision, the said plaintiff was thrown to the roadbed of the high-

way, and thereby sustained the injuries set forth in Paragraph I of Plaintiff's complaint.

### "II.

" . . . The court further finds that none of the injuries received and none of the damages sustained by plaintiff was caused by the negligence or careless operation of said automobile by said W. E. Holmlund or by the defendant. . . .

### "IV.

"The court further finds that the said plaintiff, at the time and place referred to in said complaint, was guilty of contributory negligence and then and there failed to exercise reasonable or any care for her own safety, and did then and there negligently and carelessly proceed from a position of safety into said public highway in the pathway of said automobile therein referred to, and exposed herself to danger from said automobile and other vehicles then and there traveling upon said highway, and then and there recklessly, negligently and carelessly ran into and collided with said automobile referred to in said complaint; that any injuries alleged to have been sustained by the plaintiff, as set forth in said complaint, were caused by the negligent acts of the plaintiff, aforesaid, and resulted from the contributory negligence of the plaintiff, as herein set forth."

The accident occurred on Colton Avenue in said city of Redlands. Colton Avenue is a public street running east and west. Berkeley Drive is a public street running into the said Colton Avenue. However, it does not extend south of Colton Avenue. The point of impact was about 100 feet west of Berkeley Drive on said Colton Avenue. The defendant's employee was driving the defendant's automobile east on said Colton Avenue. Plaintiff had been across the street from her home on the south side of Colton Avenue visiting with some friend and just after the time the street lights were turned on she arrived at a point on the north side of Colton Avenue where she desired to cross said avenue on her way to her home. There was no crosswalk at the place. There were only two persons who saw what happened, plaintiff and defendant's employee, who was driving the car. There was a pepper tree near the north curb of said Colton Avenue about the place where

plaintiff started to cross said avenue, said tree having a spread of about eight feet. East of said tree was a weir box. Plaintiff was standing a little west of said tree and nearly underneath it between the curb and the sidewalk. A number of cars passed while plaintiff waited at this point. When plaintiff thought it was safe she began to cross the street, moving in a slightly diagonal direction to the southwest. Said Colton Avenue is paved and is forty-five feet wide.

Plaintiff testified in part as follows: "I was watching the car that came from the west . . . I never saw this car coming. Q. After you entered you did not look, did you? A. No. . . . A. I didn't see it until it was right on me."

Defendant's employee testified in part as follows: "Q. What sort of a vehicle was it? A. Dodge touring. . . . Q. . . . did it have any special equipment? A. Well, the side of the top is—I think they call it a California top. Q. What was the condition of your automobile mechanically? A. Good. Q. And what was the condition of the top of the automobile? A. It was good. . . . A. I should say she was about a hundred feet below Berkeley Drive standing just off the curb. Q. When you say a hundred feet below, tell us the directions. A. West. Q. Were the street lights burning at that time? A. Yes, sir. Q. And you saw Mrs. Underhill where was she standing? I mean the first time? A. About a yard from the curb in the street. Q. Did she continue to stand there or did she move? A. She stood there until I was closer to her and then she moved. Q. And then from that point on tell us what happened? A. Well, the car that was meeting me passed and she started to walk so I bore to the left, which is south, and blew the horn and as I did that she started to run and I was practically almost opposite her at the time it seems as though she ran into that rear curtain. Q. With what results? A. It broke it. Q. Broke what? A. The glass in the curtain. . . . Q. It is up above the back seat, however, isn't it? A. Yes, sir. Q. In addition to breaking the glass in the curtain, what else did it break? A. It tore the fabric around this bolt. Q. And aside from these two things that happened to the curtain, what else was damaged on your car? A. Nothing that I know of. . . . Q. About how fast were you traveling when

you first saw Mrs. Underhill west about a hundred feet from where you were? A. About 20 miles an hour. Q. Did you continue that speed or reduce it? A. I reduced it. Q. When did you . reduce it? A. As I started to turn towards the left. Q. How far were you from Mrs. Underhill, approximately, when you started to turn towards the left—just before that, about how far were you traveling from the north curb as you came westerly there, approximately? A. I should say about 5 feet, maybe. Q. How far were you away from Mrs. Underhill when you swerved to the left? A. About 50 feet. Q. When did you blow your horn? A. Just as she started walking. It was while I started to turn to the left. . . . Q. Now, then, she didn't run into the front end of your car did she? A. She ran into the back end. . . . Q. And about how far had Mrs. Underhill gone to cross the street when you blew your horn? A. When I first saw her she was about a yard off the curb. By the Court: Q. Moving or standing? A. No, standing when I first saw her but then she took a few steps before I blew the horn so she would be that distance away from the curb. By Mr. Hales: Q. That is, when you blew the horn, you say she was about how far from the curb when you first saw her? A. A yard. Q. And she took a few steps and then you blew the horn and what did she do after you blew your horn? A. Proceeded to run. Q. How fast were you traveling? A. At that time I would say about 15 miles an hour. . . . Q. Did you try to stop your automobile? A. No; I slowed up but I expected Mrs. Underhill to stand there; she was stopped there and waiting for this other car to go by. Q. Which way was the other car going? A. It was going east. Q. Where were you on Colton avenue when you commenced to turn to the left? A. I would say I was about 20 feet from Mrs. Underhill. Q. That is about the time you blew the horn? A. Yes. . . . Q. Why didn't you go behind her? A. There was not room. . . . She was not there all the time. . . . Q. Were there any marks or anything on the side of your car besides this glass and the curtain that was broken? A. Not that I saw. Q. What happened to the fabric of that curtain? A. It was torn. . . . ''

The glass broken from the rear side window was found to be somewhat to the north of the center of the said Colton

Avenue. ■■ Respondent moves this court for an affirmance of the judgment for failure of the appellant to comply with the provisions of section 953c of the Code of Civil Procedure and cites a number of authorities in support of his motion. The appellant's brief contains a very small portion of the evidence. It is questionable if it complies with said section. The attention of the bar has been directed repeatedly to the mandatory character of the provisions of said section. (*Jeffords* v. *Young,* 197 Cal. 224 [239 Pac. 1054]; *Estate of Berry,* 195 Cal. 354 [233 Pac. 330]; *Dahlberg* v. *Dahlberg,* 202 Cal. 295 [260 Pac. 290]; *Bryant* v. *Kelly,* 203 Cal. 721 [265 Pac. 817].) We have cited the above cases to again call the attention of the bar to the mandatory character of the provisions of said section. In the instant case the motion is denied. The record being short we have concluded to decide the case upon its merits. In *Emerick* v. *Johnson,* 64 Cal. App. 460 [221 Pac. 675], the court, in speaking of a case where a diagram had been used by the trial court to illustrate the testimony of certain witnesses and such diagram was not before the appellate court, said: "This diagram not being before us we must assume that it lent aid to the findings made by the court." (See, also, *Godeau* v. *Levy,* 72 Cal. App. 13 [236 Pac. 354], and *Gootar* v. *Levin,* 109 Cal. App. 703 [293 Pac. 706], decided November 20, 1930.) ■■ On appeal every substantial conflict in the evidence must be resolved in favor of the finding. (*Robertson* v. *Finkler,* 27 Cal. App. 322 [149 Pac. 784].)

■■ "In examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157].)

The above findings are conclusive on this court if they are supported by any evidence in the record. ■■ The plaintiff first urges that the evidence does not support the finding that the defendant was not negligent. The appellant has made some showing by small excerpts from the testimony, but when we read the entire record we find that the defendant was driving at about twenty miles per

hour in a public street in the city of Redlands October 5, 1928, at about dark and about one hundred feet from the plaintiff, who was standing near the curb on the north side of Colton Avenue apparently waiting for traffic to pass; as the defendant advanced he slowed down somewhat and when approximately fifty feet distant he noticed the plaintiff begin to walk across the street. He turned his machine to the left and gave a usual warning sound. The plaintiff was too close to the north curb at that time for the defendant to pass behind her. About the time the defendant gave the warning signal he was moving along said street bearing toward the center thereof and when but a few feet away from plaintiff the plaintiff began to run and ran into the side of the defendant's machine near the rear thereof, breaking the glass in the rear side window. Defendant stopped within fifteen feet from the point of the collision. Defendant's machine was proceeding at a reasonable and lawful rate of speed. He gave the usual and proper warning. Plaintiff alleges that because there might have been space enough behind her for defendant to have passed at the moment of the impact that therefore defendant was guilty of negligence for not so doing. With this contention we cannot agree. Plaintiff was crossing a street at a place where there is no crosswalk. Defendant approached and gave timely warning of his approach and plaintiff immediately began to run. This the defendant could not reasonably have been expected to have anticipated. At that moment the defendant was tending to the extreme center of the street to give to plaintiff all possible chance to escape injury. However, plaintiff, without looking where she was going, ran headlong against defendant's car as it was passing. Viewing the evidence in the light most favorable to the findings we cannot say that the defendant's employee was guilty of any act of negligence in the operation of said automobile as a matter of law. The evidence abundantly supports the finding. ■ This is the more true because at the time there was in force in the said city of Redlands an ordinance known as Ordinance No. 693. Section 10 thereof is as follows: "Outside of business district no pedestrian shall cross a roadway other than by a route at right angles to the curb, and in crossing at any place other than a cross-

walk shall yield the right of way to all vehicles upon the roadway.''

Section 43 of said ordinance is as follows: ''Any person violating any of the provisions of this ordinance or any rule or regulation of the board of trustees or city marshal pursuant thereto shall be guilty of a misdemeanor.''

The place where the accident occurred is outside of a business district. Hence if said ordinance is to be given any meaning at all it must place upon the person crossing a street at a place where there is no cross-walk the duty to yield to the motorist the right of way and the defendant had a right to assume plaintiff would comply with the mandatory provision of said ordinance. Appellant urges that if she be held to be guilty of negligence the doctrine of last clear chance should apply. ■ This doctrine applies where the injured party has placed himself in a position of danger from which he cannot extricate himself or of which he is absolutely unconscious, and the defendant seeing or knowing facts from which a reasonable man would believe him to be in peril, and being able to prevent the injury by the use of ordinary care, fails to use such care and thereby causes injury (*Arnold* v. *San Francisco & Oakland Terminal Rys.*, 175 Cal. 1 [164 Pac. 798]). ■ The facts in the instant case reveal that the driver saw the plaintiff some one hundred feet away. At that time plaintiff was in no position of peril and before such doctrine can apply a position of peril must exist. The position of peril in this case came only at the moment after plaintiff began to run and that fact brought notice to the driver of the condition of peril. The defendant could not have had any notice of a position of peril until such existed. We are satisfied that the plaintiff was crossing said street in a careless and negligent manner, exercising practically no care for her own safety and that she may have been unconscious of any danger. However, we are also satisfied that due to the watchful care of the defendant's driver plaintiff was in no position of peril and there would have been no accident had plaintiff not suddenly changed her pace and ran, thus suddenly creating a position of peril; whether in a continued reckless disregard of her own safety and the rights of others or due to a sudden confusion on her part and a supposed effort to flee from danger, becomes immaterial, because at that moment and

not until then, was there a position of peril; and then the defendant's driver was too close to do anything other than he did do to avoid the tragedy. Nothing in the defendant's conduct falls short of the standard of ordinary care. Hence the doctrine known as the doctrine of last clear chance cannot and does not come to the aid of the plaintiff.

For the foregoing reasons the judgment is affirmed.

Marks, Acting P. J., and Barnard, J., concurred.