[S. F. No. 6194.   Department One.—August 28, 1913.]

## BANCROFT-WHITNEY COMPANY (a Corporation), Appellant, v. OWEN McHUGH, Respondent.

APPEAL—SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS—PROVINCE OF APPELLATE COURT.—In examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion; and every substantial conflict in the testimony is to be resolved in favor of the finding.

TROVER AND CONVERSION—ACTS CONSTITUTING—EXERCISE OF DOMINION. Any act of ownership or exercise of dominion over the property of another, in defiance of his rights, is a conversion of that property. One who sells the property of another, though he believes he has a right to, is liable to the true owner.

ID.—REMOVAL AND SALE OF DEBRIS AFTER FIRE—WHETHER A CONVERSION.—Where the building occupied by a publishing house as tenant is destroyed by fire, and a subsequent lessee of the premises employs a contractor to remove the debris, the contractor is not liable as for the conversion of valuable melted type metal buried under the debris and owned by the publishing company, because he sells the debris to a third person; neither he nor the publishing company having knowledge of the existence of the metal at the time of the sale, and he offering to rescind the sale and return the purchase money upon discovery of the metal.

ID.—SALE—OFFER OF RESCISSION—EFFECT AS ADMISSION.—The contractor, on finding that the purchaser differed with him regarding

the nature or extent of the property sold, may offer to set aside the transaction, and return what he has received, without thereby conceding the correctness of the buyer's claim.

ID.—WITNESS—CROSS-EXAMINATION AS TO AMOUNT OF METAL.—Testimony of an officer of the publishing company that he sold all the metal that "he had any idea of being on the premises" for a nominal sum is admissible on his cross-examination, where the admission of such testimony is limited to its bearing upon his testimony on direct examination as to the amount of metal on the premises.

ID.—OWNERSHIP OF METAL—EVIDENCE—HARMLESS ERROR.—Error in admitting evidence of sales of part of the metal by the publishing company was harmless, in the presence of findings by the court that the publishing company has at all times in question been the owner of all the metal, which is the only issue to which the evidence has any relevancy.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Geo. C. Sargent, and Willard P. Smith, for Appellant.

John J. Barrett, for Respondent.

SLOSS, J.—This action was brought to recover damages for the conversion by defendant of some seventy-five tons of type metal belonging to plaintiff, and alleged to be of the value of $6,750. The cause was tried without a jury, and the court, finding that the defendant had not converted any of the type metal to his own use, entered judgment in his favor. The plaintiff appeals from an order denying its motion for a new trial.

The appellant's principal contention is that the evidence does not support the finding that defendant had not been guilty of the conversion alleged. We are unable to give our assent to this claim.

On and prior to April 18, 1906, the plaintiff, a corporation engaged in the business of publishing law books, was occupying, as tenant, a building known as 612 to 622 California Street, in the city and county of San Francisco. The premises consisted of a lot fifty feet wide, with a depth of one hundred and fifty feet, and the entire lot was covered by a

one-story and basement brick building. Within the basement, at the rear, was a concrete vault, fifty feet square, and in this vault the plaintiff had stored the stereotype plates of a number of its publications. Stereotype plates are composed of antimony, tin and lead, in the proportions of twenty-two per cent, five per cent, and seventy-three per cent respectively. Over three hundred thousand pounds of such plates were in the vault on the morning of April 18, 1906. The conflagration, which began on that day and raged over a large part of the city, totally destroyed the building in question, and melted the plates. The plaintiff claimed no further right to the occupancy of the lot under its lease, but established its business elsewhere. A new lease was made by the owner, H. E. Bothin, to W. R. Grace & Company, who, before commencing to rebuild, undertook to remove the debris remaining after the fire. To this end they employed the defendant, McHugh, who entered into an agreement with them to clear the lot of such debris. While McHugh was engaged in this work, he committed the acts which, as appellant claims, amounted to a conversion of the type metal which had, before the fire, constituted the stereotype plates above mentioned.

While the facts already narrated, and some of those to be stated, are shown by uncontradicted testimony, it must be borne in mind that, in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding. In our further statement of facts, we shall not, therefore, undertake to recite the testimony, abundant as it may be, which would have supported a finding in favor of appellant's allegation of a conversion. All that is required is to point out testimony which, if given credence by the trial court, would logically lead to the conclusion that there had been no conversion by the defendant. That much of this testimony was contradicted is, in this inquiry, an entirely unimportant consideration.

Reading the record, then, in the light most favorable to the respondent's position, the following facts may fairly be said to be shown by the testimony. When McHugh commenced operations, the lot was covered, to a considerable depth, with debris, consisting of fallen brick, mortar, ashes, broken iron, copper wire, and other rubbish. No type metal or lead was to be seen. The metal here involved was buried at the rear end of the lot. McHugh had no knowledge of the existence of any such metal on the premises. The plaintiff itself was not aware that the type metal had survived the fire, had done nothing with the lot; and had not contested the right of Bothin to lease to Grace & Company, or opposed the entry of the latter. These conditions continued until after the act of McHugh, presently to be mentioned, which, as appellant claims, constituted a conversion of the type metal. About the end of June, 1906, one Silverstone approached McHugh and offered to buy the "junk" on the lot. McHugh sold him the junk for two hundred dollars. On the following day the defendant, having learned of the presence of lead or type metal, sought Silverstone and directed him to take out no more metal, at the same time offering to restore the two hundred dollars which he had received. Apparently some of the type metal had already been removed by Silverstone, but after this notification none was taken by him or by any one acting under McHugh's authority.

The claim of a conversion rests entirely upon the sale by McHugh to Silverstone. The appellant takes the legal position, fully sustained by the authorities, that any act of ownership or exercise of dominion over the property of another, in defiance of his rights, is a conversion of that property. (*Reynolds* v. *Shuler,* 5 Cow. (N. Y.) 323; *Perkins* v. *Meier etc. Brewery,* 134 Cal. 372, [66 Pac. 482].) Thus, one who sells the property of another, though he believe he has a right to, is liable to the true owner. (*Swim* v. *Wilson,* 90 Cal. 126, [25 Am. St. Rep. 110, 13 L. R. A. 605, 27 Pac. 33].) Accordingly, if McHugh, being in possession of the lot, made a sale of the type metal thereon without the consent of the plaintiff, its true owner, such sale constituted a conversion of the metal, even though McHugh may have been innocent of any intent to dispose of the property of another. And his subsequent attempt to rescind the sale would not undo the conversion

already committed. But the evidence was such as to justify the conclusion that the sale made by McHugh did not in fact embrace plaintiff's metal. The defendant testified that he had not sold any lead; that he had sold only "the junk that was on the lot and some old pieces of copper and small pieces of brass and such as that that was there." While the word "junk," in its ordinary significance, might well include such material as the melted plates, the testimony of McHugh, taken as an entirety, is fairly open to the construction that he used the term as including only the "castings, old copper and brass," that is to say, the kinds of metal that were visible in the mass of debris, and that had formed a part of the building. Some support is given to this view by the fact that he had no knowledge of the presence of the metal in controversy. It seems reasonably clear, in view of the price at which the sale was realized, that he was not consciously undertaking to sell this mass of many tons of valuable type metal. He made a sale of it only if, in his transaction with Silverstone, and in his testimony relating thereto, he used a term so broad that it necessarily covered materials of whose presence and existence he was ignorant, and which he did not, as a matter of specific purpose, intend to sell. We do not think that his language must be given this broad interpretation. No doubt his testimony, given on prior occasions in other proceedings, was more favorable to the appellant than that quoted above. So, too, his attempt to rescind the sale on discovering the presence of the lead, adds plausibility to the claim that the lead had been included in the sale to Silverstone. But these circumstances are merely items in the conflict which was to be ultimately resolved by the court below. Which version of defendant's differing statements was true was to be determined by that court. And the offer to return the purchase price to Silverstone is not necessarily inconsistent with the claim that no sale of the type metal had been made. A seller, on finding that the purchaser differed with him regarding the nature or extent of the property sold, might well offer to set aside the transaction, and return what he had received, without thereby conceding the correctness of the purchaser's claim. Again, there was testimony that it was the custom in San Francisco, after the fire, that the junk belonged to the contractor clearing the lot. Whether such custom had any legal validity is

of no consequence here.  McHugh, apparently, relied upon it in making his sale to Silverstone.  It was never contended by any one that the contractor was entitled to the type metal in controversy.  McHugh's actions, taken upon discovery of its existence, clearly evidenced a disclaimer of any such right. The court below was justified in considering this as a further circumstance supporting defendant's claim that he had not sold the type metal.  His belief that he had a right to sell the old iron, copper, and brass, while he claimed no such right with respect to the type metal, authorized the inference, consistent with the presumption of honesty and fair dealing, that he had undertaken to dispose of only that which he thought it was his right to sell.  On the whole case, we are satisfied that the finding in question is sustained by the evidence.

Several rulings on evidence are assigned as error.  F. G. Sanborn, vice-president of the plaintiff corporation, had testified on direct examination, that on April 18, 1906, there were on the premises stereotype plates weighing 317,035 pounds. On cross-examination he was asked whether he had not, on July 6, 1906, sold to Silverstone all the stereotype metal that he "had any idea of being on the premises" for one hundred dollars.  The question was objected to as not cross-examination, and because there had been no showing of Sanborn's authority to act for the plaintiff.  The court allowed the question, not for the purpose of binding the plaintiff as regards a sale, but solely as bearing upon the witness's prior testimony regarding the amount of metal.  So limited, the ruling was clearly correct.  The only possible purpose of the direct examination referred to was to furnish a basis for an estimate of the amount of metal remaining after the fire.  Anything tending to modify the witness's statement on this point was proper cross-examination.  The same reasoning applies to the introduction of the receipt given by Sanborn to Silverstone. The ruling admitting this paper was similarly limited.  Subsequently, the defendant was permitted, over objection, to put in evidence, in connection with Sanborn's cross-examination, a paper, signed by Sanborn, purporting to sell the type metal to D. Kolmetz and A. Propper for two hundred dollars. The introduction of this paper, if erroneous, was harmless, inasmuch as Sanborn had already testified, without objection, that he had made the sale.  Finally, Silverstone, called on

behalf of the defendant, was allowed to testify to a conversation with Sanborn, in the course of which he agreed to pay the plaintiff one hundred dollars for the metal which he had taken from the lot. This conversation took place after McHugh had ordered Silverstone to stop taking lead. The testimony, objected to on the ground that Sanborn's authority to bind the corporation plaintiff had not been shown, was allowed by the court for the purpose of showing that "from then on the lead was not taken off by Mr. McHugh." It is difficult to see how the testimony had any value for this purpose. But, granting that the objection should have been sustained, the short answer—an answer applying also to the assignments of error already discussed—is that the testimony admitted could have had no effect except as tending to show that plaintiff had parted with title to the property alleged to have been converted, and was not, therefore, the owner thereof when the action was commenced. The court found, however, that "on the 18th day of April, 1906, and at all times thereafter, the plaintiff was and still is the sole owner of all the type metal melted from stereotype plates and type stored in the premises formerly known as 612 to 622 California Street." The only issue to which the evidence had any relevancy having been determined in favor of plaintiff, it follows conclusively that the rulings admitting this evidence were not prejudicial.

No other points are made.

The order denying a new trial is affirmed.

Angellotti, J., and Shaw, J., concurred.