[Civ. No. 718. Fourth Appellate District.—March 18, 1932.]

HARRY SISKIN, Plaintiff and Respondent, v. ROBERT J. DEMBROFF et al., Defendants and Respondents; DISCOUNT CORPORATION OF CALIFORNIA, Intervener and Appellant.

HARRY SISKIN, Plaintiff and Respondent, v. DANIEL ROSENGARTEN et al., Defendants and Respondents; DISCOUNT CORPORATION OF CALIFORNIA, Intervener and Appellant.

Flint & MacKay and C. J. Harrison for Intervener and Appellant.

Bicksler, Smith, Parke & Catlin for Plaintiff and Respondent.

THOMSON, J., *pro tem.*—These two actions were brought by Harry Siskin, doing business as the Angeles Furniture Manufacturing Company, to recover the possession of certain furniture in the possession of defendant Dembroff in the one case, and certain other furniture in the possession of defendant Rosengarten in the other case, or the value thereof, if recovery of the furniture could not be had. Discount Corporation of California, a Delaware corporation, intervened in each case, claiming ownership of the furniture. It was stipulated by all parties that, since the matters in both of the cases were handled as practically one transaction, testimony in one case will be taken as testimony in the other case, the cases, however, not being consolidated, and the cases were tried together on the same evidence. The cases were tried without a jury and the trial court gave judgment for plaintiff in each case, from which judgments the intervener appeals. The appeals are presented on a bill of exceptions. The following matters are undisputed: That plaintiff manufactured certain furniture and delivered some of it to an apartment house held by Dembroff and the remainder to an apartment house held by Rosengarten; that plaintiff sold the furniture to S. A. Baker, doing business under the name of Adams Furniture Company, who in turn sold part of it to Dembroff, and part of it to Rosengarten under conditional sales contracts in writing; that said conditional sales contracts were assigned by the Adams Furniture Company to the intervener and the intervener held them at the time of trial; that there were no issues as to the value of the furniture or damage. Proof of other facts was received in evidence, some of which proof is conflicting and some of which appellant contends is too weak and unsatisfactory to be considered by the trial court. Such proof includes evidence of the following facts adduced through the testimony of plaintiff, his daughter, his son, and one W. A. Smith: That plaintiff was a manu-

facturer and sold only to dealers; that Dembroff, on behalf of himself and Rosengarten, with one Smith, came to plaintiff seeking to purchase furniture for said two apartment houses; that they decided upon S. A. Baker, doing business as Adams Furniture Company, as the retail dealer to handle the transaction; that, after several meetings and discussions, Dembroff selected the furniture to be manufactured by plaintiff for the two apartment houses; that a meeting was held, at which were present plaintiff, his daughter, his son, W. A. Smith (an employee of Baker) and Dembroff, and at this meeting plaintiff stated to all present, including Dembroff, that the furniture would be sold by plaintiff to Baker under a contract retaining title in plaintiff until the full purchase price had been paid to plaintiff and that the furniture would be delivered to the apartment houses respectively on special invoices providing for such reservation of title in plaintiff; and that plaintiff then and there exhibited to them a form of such special invoice; that it was understood that the furniture would be resold by Baker to Dembroff and Rosengarten and that appellant was going to finance Baker in the transaction; that appellant paid Baker for the contracts, but Baker failed to pay plaintiff for the furniture. It was stipulated that Baker absconded. The other material facts are stated in the opinion. The trial court decided that plaintiff was and is the owner and entitled to the possession of the furniture, and awarded judgment for the possession of the value of such furniture.

Appellant contends that the trial court erred in such decision in that, first, the trial court erroneously admitted in evidence certain testimony on which its decision was based; second, the findings of the trial court are not supported by the evidence; and third, the findings of the trial court, as a matter of law, do not support the court's decision.

In support of its first contention appellant claims that the trial court erred in admitting the testimony of conversations relating to, and conversations constituting, the oral agreement between plaintiff and Baker as set forth in the statement of facts above, and particularly with reference to the reservation of title to the furniture by plaintiff. Appellant objected to the introduction of these conversations in evidence on the ground that they were ''outside the

presence of" appellant. Such conversations were properly in evidence as between plaintiff and defendant Dembroff, who was present and heard them, and defendant Rosengarten, who, the evidence indicates, was represented at such conversations by Dembroff. ■ Testimony competent as to one defendant is properly in evidence, even if it is not binding upon another defendant (*Lampton* v. *Davis Standard Bread Co.,* 48 Cal. App. 116, 119 [191 Pac. 710]; *Voorman* v. *Voight et al.,* 46 Cal. 392, 397). In the absence of any facts to connect the appellant with this evidence, it would not be binding upon appellant where, as in this case, the trial court limited this evidence to apply only to the defendants other than appellant. (*Olsen* v. *J. J. Jacobs Motor Co.,* 99 Cal. App. 423, 433 [278 Pac. 1051].)

■ However, appellant contends that the trial court must have based its decision on this evidence. But we are of the opinion that there is ample other evidence upon which the trial court could have based its decision, so far· as it affects appellant. Isadore Siskin testified to the effect that, before any of the furniture was delivered by plaintiff, he went with Baker to appellant's office to get a copy of a letter from appellant to Baker, which had been exhibited to the witness, which letter stated in part that appellant would purchase from Baker the conditional sales contracts between him and Dembroff and Rosengarten "after the furniture is delivered in the apartment houses, and evidence is presented to us that the merchandise bills have been paid"; that in appellant's office on that occasion, Isadore Siskin obtained from G. E. Powell, Jr., vice-president and general manager of appellant, a copy of said letter and talked with Powell about the transaction, stating to Powell, in substance, that plaintiff was selling the furniture to Baker on a conditional sales contract and plaintiff was retaining title until the furniture was paid for; that Powell answered that he knew that, and he said it was all right with him; that he would pay plaintiff when the goods were delivered and installed. This witness testified that, later, he telephoned to Powell, stating that plaintiff was ready to send the furniture and asked if he (Powell) remembered plaintiff's arrangement that plaintiff expected to be paid before the title was turned over; and that Powell answered: "That is all right, that is the way it goes; it is perfectly all right, Mr. Siskin, send

the merchandise out. I have made arrangements and we will take care of it.'' The furniture was thereupon delivered. W. A. Smith, a witness for plaintiff, testified that he heard a telephone conversation between Isadore Siskin and Powell in which Isadore Siskin told Powell that he had not delivered any of the furniture yet and he wanted to be sure plaintiff was going to get his money and was not sure Baker would pay, and that, if he (Powell) promised to hold plaintiff's money out, he would deliver the furniture; and that Powell said: ''That's absolutely all right with me. Mr. Baker told me to do that.'' At the trial counsel agreed ''that Baker had absconded and left the country''. Plaintiff testified that, after delivery of the furniture, he talked with Powell, who told plaintiff that Baker came with checks all made out to all parties from whom he was buying, and asked Powell to give him checks. Powell said that, after giving Baker the intervener's check, he tried to cancel it, and it was too late. Plaintiff further testified that, after filing these suits, he asked Powell how he happened to give the money to Baker when he guaranteed to give the money to plaintiff, and Powell said he realized that he had made a mistake. With such evidence before it, it was not necessary for the trial court to base its decision against appellant on the evidence of the conversations between plaintiff and parties other than appellant.

At the trial plaintiff introduced his exhibit No. 2, consisting of a number of invoices containing certain printed matter to the effect that title remained in plaintiff until the full purchase price has been paid. These invoices were admitted over appellant's objection that they were incompetent, irrelevant and immaterial and that no foundation for their admission had been made and no authority for them shown. The trial court admitted them for the limited purposes of ''bringing home notice'' to parties other than appellant, and in corroboration of the fact that arrangements had been made between plaintiff and such other parties to have title reserved in plaintiff. As stated above, some of the witnesses testified that a form of such special invoice was shown to Baker and Dembroff during the negotiations for the sale from plaintiff to Baker. It is not contended that such printed matter on said invoices is evidence of any reservation of title. Appellant contends that

the trial court must have considered such invoices as evidence of such reservation of title. However, as pointed out above, there was ample other evidence upon which to base a decision against appellant, and, if we regard these invoices as inadmissible, still, under the other evidence in the case, the decision of the trial court against appellant was justified. Errors in rulings on evidence are to be disregarded unless they affect the substantial rights of the parties. (Code Civ. Proc., sec. 475.)

█ In cross-examining witness Dembroff, counsel for plaintiff asked the following question: "Who are you holding title for?" The witness answered that he was holding title for Mr. Samuel F. Bard. Mr. Bard's connection with the case does not clearly appear from the record. Counsel for appellant contends, however, that his general objection to the question should have been sustained because the facts sought to be elicited (the titles of Dembroff and Rosengarten) were not within the issues, and the disclosure of such facts could only have been sought with the idea of creating in the mind of the court an impression that there was an attempt to withhold facts that should have been disclosed to the court. If this evidence was inadmissible it was harmless error and could not have affected the rights of appellant. The reviewing court cannot assume that the trial court allowed itself to be prejudiced against appellant by such a question and answer, and there is no showing of prejudice to the appellant's rights.

█ Appellant contends that the oral contract between plaintiff and Baker, wherein it was claimed by respondent the reservation of title in plaintiff was provided for, is invalid under the statute of frauds. It is conceded the agreement was for the sale of personal property of the value of more than $200. Such an oral contract would be invalid unless it comes within at least one of the exceptions prescribed by law. In respondent's brief on appeal, respondent takes the position that there was a sufficient memorandum in writing to take the contract out of the statute, and refers to plaintiff's exhibit No. 3, which is a written order listing the furniture to be manufactured by plaintiff, and this document was signed "The Adams Furn. Shop, by S. A. Baker", as buyer. The order does not set out the title reservation clause, but it is marked in large letters "Special

Invoice", and respondent contends that the words "Special Invoice" were understood between plaintiff and Baker to refer to merchandise delivered on a title retaining contract, and that plaintiff had previously exhibited to Baker a form of such special invoice, explaining its meaning to him at the time. In the view we take of the facts in the case, it is not necessary to determine whether or not this is a sufficient memorandum to take the agreement out of the statute of frauds. The record indicates that the case was tried upon the theory that the agreement between plaintiff and Baker was an oral agreement. The evidence shows that $500 was paid to plaintiff by Baker at the time the order was signed. Plaintiff testified that he received $500 on account of the contract. Florence Greenberg, a witness for plaintiff, testified that a list of furniture (plaintiff's exhibit No. 3), was made out on January 28, 1927, before the furniture was manufactured; that Baker came to plaintiff's office and signed this order on the day he confirmed the order and the terms agreed upon; that the order had been made out previously and that this was about the middle of February, 1927. A ledger sheet of plaintiff is in evidence containing an account with Baker, and this ledger sheet shows an entry crediting Baker with the payment of $500, dated February 14, 1927. Appellant, in his reply brief, urges the point that the oral agreement must have been made before the list was prepared, which is dated January 28, 1927, and the $500 not having been paid until February 14th, it was not paid *at the time of* the sale and therefore does not bring the oral agreement within the exception to the statute of frauds. But the witness Florence Greenberg, plaintiff's office manager, testified that Baker confirmed the list about the middle of February, 1927; and the trial court could very well have concluded that the oral agreement was not completed until Baker had actually examined the list and approved it. From this evidence we think the trial court was justified in concluding that the buyer, at the time of the sale, paid part of the purchase price and thus brought the case within the exception specified in section 1624, subdivision 4, of the Civil Code and the exception specified in section 1739, subdivision 3, of the Civil Code, as these subdivisions existed at the time involved in these actions.

We believe the evidence shows that this oral agreement comes within another exception provided for in the statute of frauds, namely, that there was a partial performance of the contract in that the buyer accepted and received part of the furniture. At the trial, during the direct examination of Florence Greenberg, a witness for the plaintiff, counsel for appellant admitted the delivery of the furniture. The bill of exceptions also contains a stipulation by all parties that the furniture was delivered. Defendant Dembroff and said Florence Greenberg testified that the furniture was delivered to the apartment houses. The evidence shows that, under the oral agreement between plaintiff and Baker, it was understood that part of the furniture was to be delivered to Dembroff's apartment house and part to Rosengarten's apartment house. The testimony also shows that the furniture was receipted for in part by representatives of Baker and in part by representatives of Dembroff and Rosengarten. The delivery invoices are in evidence and defendant Dembroff testified that the persons who signed many of these invoices were the agents of himself, Rosengarten and Baker, respectively. ■ Appellant, however, urges that mere delivery or receipt is not sufficient, but it must be proved also that the furniture was *accepted* by Baker, and that such proof is lacking. If appellant is correct in his contention that acceptance by Baker was not proved, it follows then that Baker could not have entered into a valid agreement with Dembroff or with Rosengarten to sell this furniture, and the contracts which he assigned to appellant would be void as to this furniture, and the title would not have left plaintiff. Dembroff testified on cross-examination as follows: ''I accepted the furnishings and furniture a few days after April 18th. Prior to that time they were under the control of Adams Furniture Company.'' This evidence, together with the evidence that the furniture was delivered at the apartment houses with Baker's knowledge and consent, and that Baker made the contracts for its sale to Dembroff and Rosengarten and thereupon sold these contracts to appellant, is sufficient to justify the trial court in concluding that Baker accepted the furniture.

■ Appellant next contends that the findings of the trial court are not supported by the evidence. The first

specific finding objected to by appellant is the finding that on the twenty-first day of April, 1927 (a date prior to the filing of the complaints in these actions), the plaintiff was, and now is, the owner of, and entitled to the possession of the personal property involved in these actions. Appellant complains that the contract reserving title in plaintiff was oral and uncorroborated by anyone except plaintiff's own family, and that their testimony is disputed by defendant Dembroff. The evidence and stipulations of counsel at the trial showed that Baker had disappeared and was unavailable and that Powell and his secretary were dead. The trial court evidently accepted the testimony of the plaintiff and his "family" as true, and matters going to the credibility of witnesses and the determination of conflicts of evidence ordinarily fall within the exclusive province of the trial court and will not be disturbed on appeal. (Code Civ. Proc., secs. 1847 and 2103; 27 Cal. Jur., p. 186.) In examining the sufficiency of evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is to be resolved in favor of the finding. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 Pac. 1157].)

Appellant urges that, if there was a reservation of title, we may be sure that plaintiff would have provided for it in the usual way by making a written agreement to that effect. There is no such legal requirement. A verbal contract for the sale of personal property, when the seller retains the legal title conditional upon full payment of the purchase price, is valid, if not otherwise in contravention of the statute of frauds (*Shook* v. *Levi,* 240 Fed. 121; *Wise* v. *Collins,* 121 Cal. 147 [53 Pac. 640]).

Another finding of the trial court which is objected to is one to the effect that, at different times before appellant purchased the contracts from Baker, plaintiff notified appellant of the conditions under which the furniture was being manufactured and sold and that title was to remain in plaintiff until the full amount of the purchase price had been paid to him and that the title of said

merchandise was reserved in plaintiff under such contract and appellant knew that the balance of the purchase price was payable upon the completion of installation. Counsel for appellant urges that there is no evidence to support such a finding and contends that, even if appellant did receive such notice from plaintiff, it did not have any notice or knowledge of any *right* on the part of plaintiff, as distinguished from a mere contention on the part of plaintiff that he claimed a reservation of title in himself, and that there is no evidence that Baker ever advised appellant that he consented to such claim. We find no merit in this contention. Isadore Siskin testified that he went to appellant's office with Baker and that, in the presence of Baker, he told Powell, appellant's vice-president and manager, about the contract and about the reservation of title. Witness W. A. Smith said he heard a telephone conversation between Isadore Siskin and Powell, in which Powell said Baker told him to hold out the money due plaintiff on the furniture. While this is not conclusive evidence of such knowledge on the part of appellant, the trial court might well have believed it, and, after considering this evidence and all the circumstances of the case, might well have concluded that appellant had knowledge that Baker consented to the reservation of title in plaintiff. We are of the opinion, however, that, if appellant had knowledge of plaintiff's *claim* of ownership, it was not necessary for it to have knowledge of his *right* to ownership. The duty was upon appellant, knowing about plaintiff's claim of title, to ascertain if the claim was valid. With such notice or knowledge appellant cannot claim to be an innocent purchaser as against the plaintiff. (*Marker* v. *Williams,* 39 Cal. App. 674, at 678, 679 [179 Pac. 735].)

The trial court further found in substance that appellant never was at any time the owner of said furniture or any part thereof, or any right, title or interest therein or "right to the title thereof", and appellant contends such finding is not supported by the evidence. Appellant argues that the authorization by plaintiff of a resale by Baker of the furniture and a sale of the resale contracts was in effect a *waiver* by plaintiff of his reservation of title and of his notice to appellant of such reservation of title. Section 1142 of the Civil Code of California, which

was in effect at the time involved in these cases, and which provided that "where the possession of personal property, together with a power to dispose thereof, is transferred by its owner to another person, an executed sale by the latter, while in possession, to a buyer in good faith and in the ordinary course of business, for value, transfer to such buyer the title of the former owner . . .". It cannot be said that appellant is the kind of a buyer contemplated by the statute when we consider the evidence to the effect that appellant, before taking the assignment of the resale contracts from Baker, knew about this transaction and the terms of the contract for the sale of the furniture, and knew that plaintiff reserved in himself title to the furniture, and that appellant was afterward, and before the delivery of the furniture under that contract, notified again of such reservation of title. We must also bear in mind that the authority given by plaintiff to Baker to resell the furniture and to sell the resale contracts was not a general authority such as is usually found in the cases cited as authorities on this subject, but was a very limited authority and was confined to permission to sell the goods, not in the ordinary course of trade, but only to Dembroff and Rosengarten by delivery direct from the factory to the apartment houses, and to sell the resale contracts, not to an innocent purchaser in the ordinary course of that business, but only to appellant; and, in any event, the sales of the furniture and of the resale contracts were to be made subject to plaintiff's reservation of title; all of which limitations, including the reservation of title in plaintiff, were well known to all the parties to the transaction, including appellant.

Appellant cites in support of his contention last mentioned the following language from California Jurisprudence, volume 22, page 1118: "Although the parties to the contract agreed that title should remain in the seller, a reference to elemental principles leads to the conclusion that rights may be acquired by third persons who have extended credit to or dealt with the buyer relying upon the latter's possession and apparent ownership, and without knowledge or notice as to the state of the title." This correctly states the rule therein discussed, but it does not apply to the facts of the instant case because, as stated above, appellant was not "without knowledge or notice as to the state of the

title'', and did not rely upon the apparent ownership of Baker, but rather relied upon Baker's honesty, when appellant, through Powell, entrusted the money to Baker to pay plaintiff for the furniture, so that title might pass to appellant, Powell knowing at the time that the title was reserved in plaintiff. Baker failed to pay the balance of the purchase price to plaintiff and, such balance being unpaid, title remained in plaintiff by reason of the provision in his conditional sale contract with Baker to the effect that plaintiff would retain title until the purchase price was fully paid. On the following page of the same volume of California Jurisprudence (p. 1119) appears the following language: ''Without any doubt, the right of persons who deal with the buyer is inferior to the right of the seller where it appears that such persons had actual knowledge of the state of the title.''

Appellant cites section 3543 of the Civil Code of California, which provides that ''Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer''; and reasons that appellant has suffered through plaintiff's negligence in extending to Baker the limited authority above mentioned. However, under the evidence in the case, the trial court might well have found, and no doubt did conclude, that the loss occurred through the negligence of Powell, vice-president and manager of appellant, in paying the money for the furniture to Baker instead of to plaintiff, with full knowledge of the reservation of title in plaintiff. Where the person claiming under the buyer had full knowledge as to the state of title the question of estoppel of the owner by reason of his negligence is not presented (*Lowe* v. *Woods,* 100 Cal. 408 [38 Am. St. Rep. 301, 34 Pac. 959]; *Pacific Finance Corp.* v. *Hendley,* 103 Cal. App. 335, 339 [284 Pac. 736]).

Under appellant's third main contention, namely, that the findings of the trial court as a matter of law do not support the court's decision, appellant advances the argument that, even if the evidence objected to was validly admitted and the findings objected to were amply sustained, still plaintiff is not entitled to recover, for the reason that, where the original seller gives his purchaser *actual* authority to resell the goods and to sell the resale contracts, the purchaser of

the resale contracts is protected, whether or not he knew of any reservation of title on the part of the original seller. There is, of course, a recognized difference between actual authority and apparent authority in connection with conditional sales contracts. Actual authority is express authority. Apparent authority arises from facts and circumstances and operates by way of estoppel, as "where the true owner holds out another or allows him to appear as the owner of or as having full power of disposition over the property, and an innocent third person is thus led into dealing with him, the rights of the innocent person will be protected; . . . the true owner can neither legally nor equitably complain or maintain a cause of action against the innocent party for the obvious reason that he himself has put it within the power of the apparent owner to dispose of the property." (*Rapp* v. *Fred W. Hauger Motors Co.,* 77 Cal. App. 417, 421 [246 Pac. 1067, 1068].) In such a case the innocent party's rights do not depend upon any actual title or authority of the party with whom he deals directly, but are derived from the act of the real owner by which such situation was created, and which estops or precludes him from disputing, as against the innocent purchaser, the existence of the title or authority which by reason of his negligence or mistaken confidence he has caused or allowed to be vested in the party who sold to the innocent purchaser. (*Western States Acceptance Corp.* v. *Bank of Italy,* 104 Cal. App. 19, 23 [285 Pac. 340]; *Pacific Finance Corp.* v. *Hendley,* 103 Cal. App. 335, at 338 [284 Pac. 736].)

We know of no California cases, and none has been cited by appellant or respondent, which directly support or refute appellant's contention last above mentioned, and apparently the exact question has never been determined in any California authority. Appellant cites a note found in 47 American Law Reports, page 86, wherein the author of said note does conclude from the cases previously cited therein (none of them being from this jurisdiction) that "it is not necessary that he (the subvendee) be a *bona fide* purchaser for value any more than if he had purchased directly from the conditional seller. In other words, the sale having taken place within the actual authority conferred upon the conditional buyer, title passes to the subvendee." The author of the

note, however, indicates that this rule does not obtain in California, for he refers to section 1142 of the Civil Code of California and certain California cases which were determined on the question of estoppel. The note also recites that in many states the rule is confined to a purchaser in the ordinary course of trade. The language of section 1142 of the Civil Code of California, we believe, is broad enough to cover both cases mentioned by appellant, namely, the case in which the original seller gives his purchaser *actual* authority to resell, and one in which the authority to resell is only *apparent*. The words in the statute "with a power to dispose thereof", we believe, refer to both actual and apparent power to dispose of the personal property. This statute, of course, requires that the purchaser must be a buyer in good faith and in the ordinary course of business, and, as pointed out above, the appellant herein is not such a buyer.

In the view we take of this case, it is not necessary to determine appellant's contention last above mentioned, because all of the numerous authorities cited in support of that contention indicate that such resale must have taken place within the actual authority conferred upon the conditional buyer, or title will not pass to the subvendee. From the evidence in this case it is apparent that the sale of the resale contracts to appellant by Baker was not within the actual authority conferred by plaintiff upon Baker. The authority conferred upon Baker by plaintiff was a very limited and restricted authority and it did not authorize Baker to actually transfer any title until the balance of the purchase price had been paid to plaintiff. The trial court evidently concluded, and, we believe, had ample evidence to conclude, that it was contemplated and agreed by all of the parties to the transaction, including Powell (acting for appellant) that, under no circumstances would any title pass from plaintiff until the balance of the purchase price had been paid to plaintiff. The evidence showed that plaintiff took every reasonable means to prevent the situation that arose. He and his son repeatedly notified Powell that plaintiff would not surrender title until he had received the balance of the purchase price, and the court found that Powell knew title was reserved in plaintiff. It would have been an easy matter for Powell to have paid the

balance to plaintiff or to have escrowed it, conditioned upon the transfer of title from plaintiff to appellant.

We have failed to comment on other points and authorities cited in appellant's briefs, as we think the principles contained therein have been covered under other points in the opinion.

For the foregoing reasons we are of the opinion that the trial court did not commit any prejudicial errors in the admission of evidence, that the findings are supported by the evidence, and that the findings fully support the judgment.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.