[Civ. No. 5094.   Third Appellate District.—June 12, 1934.]

NEW YORK INDEMNITY COMPANY (a Corporation), Appellant, v. WESTERN LOAN & BUILDING COMPANY (a Corporation), Respondent.

Mathes & Sheppard, W. C. Mathes and Robert A. Cushman for Appellant.

Bicksler, Parke & Catlin, James C. Ingebretsen and Ingebretsen, Ray & Rawlins for Respondent.

RANKIN, J., *pro tem.*—By this action plaintiff seeks a judgment for damages predicated upon fraud and deceit. The complaint, after averments of the corporate existence of the parties, alleges:

"That the defendant, Earl Lund, is and was, at and during all the times herein mentioned, the agent, servant and representative of the defendant, Western Loan and Building Company, a corporation, at its office in the City of Los Angeles in said State of California," and alleges acts and representations of the defendant, "By and through the defendant, Earl Lund, while acting as the agent, servant and representative of the defendant, Western Loan & Building Company."

The trial court found: "It is not true that the defendant, Earl Lund, on or about the 21st day of December, 1926, or at any other time in plaintiff's complaint alleged, was the agent and/or servant and/or representative of the defendant, Western Loan & Building Company, a corporation," and further found in favor of defendant upon all material issues made in the pleadings.

While appellant's statement of the questions presented by its appeal is ambiguous, it is apparent that the sole question involved is whether or not the evidence supports the findings. Appellant's contention is that the uncontradicted evidence establishes the agency of Earl Lund as alleged. We are unable to assent to this claim.

The plaintiff is a corporation doing a general surety business in the state of California. The witness, Paul Doring, was manager of the surety department conducted by plaintiff. His duties were the underwriting of surety bonds for

all purposes and he had authority to execute bonds for the plaintiff. The defendant is a Utah corporation engaged in the building and loan business with its main office in Salt Lake City, Utah. On the dates mentioned in the complaint it maintained a branch office at 505 West Fifth Street in the city of Los Angeles. S. H. Lund was the agent of the company in charge of that office. His authority as agent was evidenced each six months by a certificate issued by the defendant, granting him authority to take applications for its stock and collect the installments indicated in the applications, which certificate contains the limitations as follows:

"No authority is granted by this commission to any agent to promise or contract to make loans for any amount at any time or to bind this company to pay any debt contracted by the agent or waive loans for any amount or at any time or to bind this company to pay any debts contracted by the agent or waive any of the conditions contained in the printed literature of this company. All contracts incurring the expenditure or refunding of money, granting or contracting for loans, must be arranged through the home office. Local agents may be appointed subject to the approval of the home office. Good for six months only."

No salary was paid by defendant corporation to S. H. Lund. He employed his own help. No person working for him was employed by the defendant. He received his compensation from commissions on loans paid by the borrower. The defendant had no responsibility in connection with the expenses of the office in Los Angeles.

The Los Angeles office conducted by S. H. Lund maintained on the doors or windows of its Fifth Street office in Los Angeles, the printed words: "Western Loan Agency of the Western Loan & Building Company, Salt Lake City, Utah. S. H. Lund, Agent."

S. H. Lund employed in his office three people, one of whom was Earl Lund. He paid this man a salary of $125 per month. Earl Lund had authority to interest prospects for loans, and attend to details connected with loans in process, such as checking insurance, procuring title papers, etc. He could and did sign letters, "S. H. Lund, by Earl Lund", and in S. H. Lund's absence he, together with another employee of Mr. Lund's, could sign checks for S. H. Lund.

The Los Angeles office was supplied with printed forms of applications for loans and other literature, together with letter-heads, by the home office at Salt Lake. The office was rented by and belonged to S. H. Lund and all its expenses were paid by him. S. H. Lund carried on all his financial transactions through his personal bank account and in his own name.

The witness V. R. Martin testified that he was vice-president and general manager of defendant; that S. H. Lund had the usual certificate which outlines his authority as agent up to the end of December, 1926, and had noticed the signs on the front door or front windows of the Los Angeles office. He knew that Earl Lund was working in that office but did not know in what capacity, as S. H. Lund hired his own men.

Some time in September, 1926, one A. M. Kal made a written application addressed to the defendant for a loan on certain real property. This application was submitted to S. H. Lund at the Los Angeles office by one Obuchon. This application was considered by S. H. Lund and he made some investigation of A. M. Kal's financial abilities and forwarded the application for loan to the Salt Lake office. The loan was afterwards approved by the defendant, but it did advise the Los Angeles office by letter that a ''building indemnity'' bond would be required before the first half of the proceeds of the loan would be advanced. After a note and mortgage to complete the loan were prepared and sent to the Los Angeles office to be executed, some question arose as to the title to the property covered by the mortgage. On November 29, 1926, Earl Lund carried on negotiations with the California Group Corporation for a loan by that corporation to Mrs. Kal. About December 18, 1926, Earl Lund called at the plaintiff's office with one Louis Schemnitz, the contractor who had entered into a building contract with Mrs. Kal, for the purpose of arranging for the execution of a material and labor bond and a faithful performance bond by the plaintiff, as surety for said contractor. Earl Lund at that time stated to plaintiff's manager Mr. Doring that there was $80,000 cash on hand from the building loan with which to meet the contract price of the building. Mr. Doring replied that such amount was insufficient inasmuch as it was $10,000 short of the contract price. Earl Lund there-

upon stated that they would get an additional $10,000. Mr. Doring then replied: "If you, as representative of the Western Loan & Building Company will put that in writing we will write the contract bond." Earl Lund said that he would do so and that he had authority to write such a letter. On December 21, 1926, Earl Lund addressed the promised letter to plaintiff under his own signature. This letter was written upon the form letter-head used by the Los Angeles office of the defendant, but otherwise made no mention whatever of the Western Loan & Building Company.

Relying upon the statements of Earl Lund and without further or any investigation or inquiry as to the authority of Earl Lund as agent or otherwise, the plaintiff executed the bond applied for by the contractor Louis Schemnitz, and delivered said bonds to Earl Lund. The written application for the bonds addressed to plaintiff was signed by Louis Schemnitz, the contractor.

The plaintiff assumed the burden of showing that Earl Lund was the agent of defendant. Evidence of the statements and acts of Earl Lund was admitted by the court with the understanding that plaintiff would connect up the latter to show the agency. Not only did plaintiff fail to prove agency, but it appears from the evidence that defendant never received an application for membership or loan from Earl Lund; that he was not an employee or agent of defendant in December, 1926, and was never under the direction of defendant in any way; that defendant was not informed nor did it have any notice or knowledge of the transactions between Louis Schemnitz and Earl Lund and the plaintiff relative to the issuance of said bonds, or of the letter dated December 21, 1926, written by Earl Lund over his own signature. There is nothing in the record from which it appears that defendant was obligated to or in any way intended to act as agent for the contractor in securing for the contractor bonds of any kind, nor does it appear that defendant had any knowledge that Earl Lund was acting as agent for the contractor in securing such bonds to be issued by plaintiff. So far as appears from the record the defendant was a stranger to said transaction and has no interest therein.

█ Appellant contends that Earl Lund was the ostensible agent of defendant and to substantiate his claim relies

upon the oral statements of Earl Lund and the letter addressed to plaintiff written on Western Loan & Building Company's stationery and upon what is referred to as facts and circumstances. Earl Lund's own statement as to his authority was inadmissible to prove agency and it was the province of the trial court to weigh and determine the facts and circumstances shown to exist. The court having found on conflicting evidence that Earl Lund was not the agent of defendant and did not act as such agent, this court is bound by that finding.

In examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion; and every substantial conflict in the testimony is to be resolved in favor of the finding. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157].)

The finding against plaintiff on the question of agency is fatal to plaintiff's case and in harmony with that finding the court further found in favor of defendant upon all other material issues made by the pleadings.

It is unnecessary to cite further authorities in support of the rule that the appellate court will not review or disturb findings of fact on conflicting evidence. Appellant's contention that the agency of Earl Lund is established by ratification or estoppel is not supported by the record.

The judgment is affirmed.

Thompson, J., and Plummer, Acting P. J., concurred.