[Civ. No. 6068. Third Appellate District.—May 25, 1939.]

T. J. CRAWFORD, Appellant, v. MARYSVILLE FUEL COMPANY (a Corporation), Respondent.

Erling S. Norby and A. B. Reynolds for Appellant.

Ray Manwell and George R. Freeman for Respondent.

PULLEN, P. J.—This action was brought to recover damages suffered as the result of plaintiff having fed his turkeys paddy rice purchased from defendant, as turkey feed, it being alleged that the paddy rice contained naphthalene in the form of moth balls, and that as a result of the feeding of said rice many of plaintiff's turkeys were poisoned and died, and the remainder of the flock lost weight and otherwise deteriorated.

The court rendered judgment in favor of defendant, and from that judgment this appeal is taken.

The appellant's principal contention is that the evidence does not support the finding that plaintiff has not been damaged in any sum by reason of the feeding of said rice purchased from defendant.

It must be remembered that an appellate court in examining the sufficiency of the evidence to support a questioned finding must accept as true all evidence tending to establish the correctness of the finding as made, considering also all inferences which might reasonably have led the court to the same conclusion. It is also necessary that every substantial conflict in the testimony be resolved in favor of the questioned finding. In examining the record, therefore, it is our duty to weigh that testimony which, if accepted by the trial court, will logically lead to the conclusion that the presence of moth balls or naphthalene did not make the rice unmerchantable and unfit to be used for feed for turkeys. It is only necessary to consider that testimony which, if believed by the trial court, would support the judgment. (*McHugh* v. *Bancroft-Whitney Co.*, 166 Cal. 140 [134 Pac. 1157].)

The complaint alleges, briefly, that defendant at all times mentioned was engaged in the feed business, and that plaintiff was engaged in the business of turkey raising, and was the owner of some 2,680 tom turkeys and 215 hen turkeys, which were being prepared for the market. That on the 4th day of February, 1936, plaintiff purchased from defendant some two tons of paddy rice for turkey feed, and

at the time of the sale defendant knew that plaintiff was engaged in turkey raising and that said rice was to be used for turkey feed; that defendant warranted said rice so sold to plaintiff to be fit for the purpose for which it was sold; that said rice was not merchantable nor fit to be used for such purposes for the reason that it contained a poisonous substance known as naphthalene, of the presence of which plaintiff had no knowledge. Plaintiff fed some of this rice to his turkeys, and as a result thereof some 876 toms and 122 hens died and others became sick, to the damage to plaintiff in the sum of $6,884.43.

The answer of defendant admitted the sale of the rice to plaintiff but denied it contained any poisonous substance or that the same was unfit for the purpose for which it was sold, and denied that any of plaintiff's turkeys became sick or died as a result of the feeding of said rice or that plaintiff was damaged in any amount by any act of defendant.

From the evidence adduced at the trial it appeared that plaintiff had been engaged in turkey raising for several years, and during the months of September, October and November of 1935, plaintiff had some disease among his turkeys and during that time lost about 350 turkeys. The exact nature of the disease was not determined, but the turkeys were treated and by Thanksgiving time they were apparently well, and a number were marketed during the holiday season.

On the 29th day of January, 1936, the day on which he made his last purchase of other type of grains prior to the delivery of the paddy rice, plaintiff told an employee of defendant corporation that his turkeys were sick and that he was having trouble and he did not know what to do. On the 4th day of February, 1936, plaintiff took delivery of some ten or twelve sacks of the rice in question, and the following day he took a similar amount, and on February 6th, he received delivery of the balance of the order.

Plaintiff testified that he fed the grain from a truck into the feed troughs on the evening of February 4th and on the next day fifteen or twenty turkeys were dead with compacted crops, and that over a period of several days other turkeys became affected, being unable to eat, and died of starvation. Three or four days after the first feeding of the paddy rice plaintiff noticed the naphthalene balls in the feed troughs and on the ground. It also appeared that the plaintiff had been

using corrosive sublimate, a mercuric chloride combination, for disinfecting the turkeys' drinking water, and on the 6th day of February, 1936, plaintiff called upon the farm adviser of Yuba County, and inquired as to whether or not the use of an ounce and a half of corrosive sublimate to about fifty gallons of water was a good disinfectant. The farm adviser testified that corrosive sublimate is a poison and that it should not be used as a disinfectant in any proportion and that it had an accumulative effect on turkeys, that is, they gradually absorbed the poison from the disinfectant in the tissues of the kidneys, which was bound to cause trouble later on as well as immediately.

There is apparently no dispute but what the napthalene was in the paddy rice. This rice had been purchased by defendant corporation from the Rice Growers' Association and they had acquired the rice from the Appraisal Board of the California Rice Industry. This rice was sample rice, and the naphthalene had been placed therein to keep out vermin. Prior to the sale the association had attempted to screen the moth balls out of the rice, although apparently some had been overlooked. The rice was analyzed in March of 1936 and was then shown to contain .04 of one per cent of naphthalene.

On February 14, 1936, plaintiff took two of his sick turkeys to the state department of agriculture, where they were examined, and an autopsy showed they were suffering from an inflammation of the intestines called enteritis, which could have been caused by a variety of conditions such as different classes of food, overeating, climatic conditions, or even the disinfectant used in the water.

Mr. Gierke, a pathologist for the state department of agriculture, division of animal industry, made no finding that naphthalene had anything to do with the condition of the turkeys, but found that the turkeys suggested faulty feeding as the chief cause of the trouble. Mr. Gierke also performed certain experiments on other turkeys,—one was fed some of the paddy rice in question for a period of ten days with no ill effects; it was then forcibly fed one-half gram of moth balls for five or six days, and after an interval of about a week was again fed pieces of moth balls, and shortly thereafter died. It was also developed that a turkey would not voluntarily eat naphthalene, and in carrying out these experiments it was necessary to forcibly feed it to them. Other

portions of the same lot of paddy rice as that purchased by plaintiff was sold by defendant to two other turkey growers, both of whom fed the rice to their turkeys without any ill effects whatever. In the feed troughs of these two growers were found moth balls after each feeding, which the turkeys had rejected.

Certain experiments were carried out by Wilbur Smith and Mrs. Gusta Corey, which also showed that turkeys would not voluntarily eat the naphthalene, and also it developed that the naphthalene placed with the paddy rice did not adhere to the rice grains. Mrs. Corey also testified that in her opinion paddy rice was not a proper feed without adequate greens to go with it.

It was established that turkeys are delicate birds and difficult to raise and that the normal loss varies from twelve to twenty-five per cent.

A turkey picker testified that he picked turkeys for plaintiff on February 2d, which was prior to the feeding of the rice in question, and at that time the turkeys did not look very good. They had lost weight. He also observed that "they stood around humped up", and that there was probably half a dozen dead turkeys lying along the edge of the corral.

Plaintiff, himself, testified on direct examination, that his turkeys were sick and dying between the 27th day of January, 1936, and the 3d and 4th days of February, which was prior to the purchase of the paddy rice.

Dr. Robert B. Aird, called as a witness by plaintiff, testified that naphthalene was not classified as a poison. Mr. C. H. P. Lichhardt also testified that naphthalene was used for medicinal purposes for both humans and animals.

From the foregoing brief summary it is clear the evidence is sufficient to support a judgment in favor of the defendant, and also there was no abuse of discretion on the part of the trial court in denying the motion for a new trial.

The judgment is affirmed.

Thompson, J., and Tuttle, J., concurred.