[Civ. No. 22604.   Second Dist., Div. One.   May 21, 1958.]

In re TRACY LURENE GANO, a Minor.   CHESTER E. ANDERSON et al., Respondents, v. DONALD ELMER GANO et al., Appellants.

Frederick A. Kepka for Appellants.

Bentson & Blumberg for Respondents.

LILLIE, J.—This is an appeal by the natural parents, Donald Elmer Gano and Ila Lurene Gano, from a judgment declaring their minor child, Tracy Lurene Gano, to be free from their custody and control.

The respondents, Chester E. Anderson and his wife, are the brother and sister-in-law of the natural mother. They acquired physical custody of the minor child on June 12, 1955, in Washington. Seeking to adopt her, respondents commenced abandonment proceedings 13 months thereafter by filing a petition under section 701, subdivision (a) of the Welfare and Institutions Code. It was heard on February 4, 1957. Appellants' motion for a nonsuit was denied. The trial court found that ". . . Tracy Lurene Gano, has been left in the custody of another by her parents for more than one year prior to the filing of petition herein without provision for her support or maintenance and with only token communication from her said parents with intent of said parents to abandon said person.'' The judgment, entered February 13, 1957, declared Tracy to be free from the custody and control of her parents. From the judgment and the order denying their motion for a nonsuit the natural parents have appealed.

Their main point on appeal is that the evidence was insufficient to justify the court's finding that the natural father and mother left their child in the custody of another for more than one year without provision for her support and with intent to abandon her. They further urge that the trial court abused its discretion in finding that the parents made only token communication regarding the child and that the evidence was insufficient to justify the finding. To be considered also is appellants' contention that as a matter of law there was no abandonment and the trial court erred in denying appellants' motion for nonsuit.

Donald Gano and his wife, Ila, appellants herein and residents of Montana, have four children including Tracy. In June, 1955, they lived in Othello, Washington, with their two children, Christine and Tracy. During an argument Donald forceably evicted Ila from the family trailer and took the children to his parents. A week later, his wife not having returned, Donald telephoned Ila's sister Florence and told her that she would have to take the children or he would give them to the welfare authorities. Florence wanted Christine but not Tracy, who was then 7 months old. She contacted her brother, Chester Anderson, also a brother of Ila and asked him and his wife, respondents herein, to take her.

On June 12, 1955, three days after Donald called Florence, she and the Andersons drove to Othello to see him. After talking at length with him about Ila, Christine and Tracy, he again told them that if they did not take the children he would turn them over to the welfare authorities. Later in his father's trailer Florence and respondents told Donald they wanted to raise the children as their own on a permanent basis and would not take them under any kind of a temporary arrangement. Twice that morning Donald told Anderson that he wanted him to adopt Tracy and raise her as his own; that he didn't want her to know who her mother and father were and that although he wanted visitation privileges he didn't want to visit her for a year or two.

They then went to the office of Fred Shelton, a lawyer known to appellants but unknown to respondents, to have him prepare an agreement whereby Donald would relinquish custody of the two children for adoption. Anderson in the presence of Donald told the facts to Shelton and advised him he was leaving for Philadelphia to attend Navy School and wanted a custody agreement for the future adoption of Tracy and to protect him in case of a misunderstanding. Later in the day they returned to sign the agreement. At that time respondents took Tracy and several days later left for Philadelphia where Anderson attended Navy School for six months. During this time they lived across the river in Thorofare, New Jersey. Respondents since then have corresponded with Florence and other members of the family about once a month.

In July, 1955, respondents received a letter from Ila, the contents of which they could not recall but to which Anderson replied on July 30, 1955. Both Mr. and Mrs. Anderson testified that this was the only communication they ever received

from appellants and that at no time had they received any other letters, cards or communication from them. They also denied having received any gifts or support from appellants on behalf of Tracy. In December, 1955, respondents were transferred to Long Beach where they now reside. When they moved from New Jersey they left their forwarding address.

On March 20, 1956, respondents' attorney Myron Blumberg of Long Beach directed a letter to Donald's father advising him that abandonment proceedings were about to be commenced and asked for Donald's address. To this letter they received no answer from appellants, nor did they receive any reply to Mr. Blumberg's letter to appellants dated May 3, 1956, wherein he told them of the Andersons' intention to adopt Tracy, or to the citation directed to them September 27, 1956.

Ila testified that immediately after leaving Donald she went to their lawyer Fred Shelton and asked him to draw up some papers "so I could have my kids." Ten days later she returned and was told by him that he had forgotten to prepare them and that Donald had transferred the children's custody. Shortly thereafter she and Donald reconciled and on June 18, 1955, they went to Florence's home and got Christine. Donald did not mention Tracy but Ila told Florence: "I could not give up Chrissie, but I don't want Tracy." Prior to that date Ila told Florence that Tracy had been sickly since her birth and she would like to have someone else care for her. Ila further testified that she wrote to Anderson in July, 1955, and asked for Tracy, and in December sent a package of toys, which Donald mailed. Donald at no time personally communicated with the Andersons or Tracy, either in New Jersey or Long Beach. Florence, in addition to corresponding with the Andersons, wrote to appellants once a month and saw them in her home at various times since June 18, 1955. During these visits Ila made little mention or inquiry of Tracy; Donald made none.

Appellants claim that there was not sufficient evidence upon which the court could base its finding that both parents left Tracy for more than one year in the custody of another without provision for her support with intent to abandon her. This court is familiar with the general rules set forth in the cases cited by appellants and more particularly with the fundamental principle that in an adversary proceeding of this kind every intendment should be made in favor of maintaining the natural relation of parent and child. However, appel-

lants in their argument overlook the substantial evidence in the record pointing to the conduct of each parent during the period in question, reflecting their clear intention to abandon Tracy to respondents; the well-known principle of law that the reviewing court will not reevaluate the credibility of the witnesses, reweigh the testimony, or draw inferences contrary to those drawn by the trial court; and the wealth of cases decided under section 701, subdivision (a) of the Welfare and Institutions Code holding that the matter of abandonment and intent is one of fact for the trial court to determine.

A reviewing court must accept as true all evidence tending to establish the correctness of the findings of the trial judge. All conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences must be indulged in to uphold the judgment. It is well settled that whenever a finding or judgment of the trial court is attacked as being unsupported, the power of the reviewing court begins and ends with the determination of whether there is any substantial evidence, contradicted or uncontradicted which will support the conclusions reached by the trial court (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 P. 1157]). All evidence most favorable to respondents must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed (*Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384]).

That abandonment and intent under section 701, subdivision (a) of the Welfare and Institutions Code are questions of fact for the trial judge is well established. His decision, when supported by substantial evidence, is binding upon the reviewing court. An appellate court is not empowered to disturb a decree adjudging that a minor is an abandoned child if the evidence is legally sufficient to support the finding of fact as to the abandonment (*In re Welch,* 108 Cal.App.2d 466 [238 P.2d 1031]; *In re Ayers,* 116 Cal.App.2d 55 [253 P.2d 65]). This is true, also, on the question of intent. (*In re Jones,* 131 Cal.App.2d 831 [281 P.2d 310].)

Section 701, subdivision (a) of the Welfare and Institutions Code in part provides that a minor who has been left in the care and custody of another without any provision for his support or without communication from either or both of his parents for a period of one year with intent on the part of

such parent or parents to abandon him shall be deemed abandoned and declared free from such parental control. The section further reads that ''Such failure to provide, or such failure to communicate for the period of one year, shall be presumptive evidence of the intent to abandon.'' (Welf. & Inst. Code § 701, subdivision (a).)

█ The statutory presumption of intent to abandon a minor left in another's care arises from a failure of the parents to provide for or communicate with the child for a year. Although, like any other rebuttable presumption, it may be overcome by opposing evidence, the question of whether an intent to abandon has existed for one year is a question for the trial judge. (*In re Sanders*, 88 Cal.App.2d 251 [198 P.2d 523] ; *In re Creely*, 70 Cal.App.2d 186 [160 P.2d 870] ; *In re Peterson*, 56 Cal.App.2d 791 [133 P.2d 831].)

█ Referring first to the conduct of Donald, an analysis of the evidence discloses that he solicited the help of Ila's relatives; that he was gainfully employed at the time he gave the children to them; that he had adequate time in which to consider the children's future before calling Florence and signing the custody agreement; that he had the advice and counsel of his parents and family lawyer and he knew from the beginning that respondents would not take Tracy on a part time basis, but intended to adopt her. Substantial evidence points to the conclusion that Donald knew he was relinquishing Tracy for all time on a permanent basis and was satisfied with the arrangement. While the written agreement may be legally ineffective it is of course suggestive on the question of his intent. It clearly appears in writing that he was willing to permanently waive all right to the custody of the child. Although he had ample time and opportunity to express his dissatisfaction with the custody agreement before signing it, he did not do so. The fact that Donald may have been emotionally upset does not in itself make his act of relinquishing custody involuntary under the law, nor does the fact that his work may have precluded him from personally caring for the children constitute the coercion or undue influence contemplated under the cases cited by appellants. These factors may, however, be properly considered with other circumstances in determining the question of intent. It is true that his acts may have been originally motivated by his belief that he could not personally care for the children, but Donald lived in close proximity to his parents and in the general area of Ila's large family. He was employed and had access to legal advice.

The trial court could have reasonably inferred that had he cared to, Donald could have arranged and paid for Tracy's care without permanently relinquishing her custody. The record is silent as to any efforts he might have made to contact the welfare authorities or anyone else to determine what could be done about caring for the children on a temporary basis. To say that his acts in handing Tracy over to the Andersons and executing the agreement were not voluntary is to ignore the entire circumstances surrounding the transaction.

Donald's subsequent behavior during the period in question is entirely consistent with his original intent to relinquish custody of Tracy permanently and during the 13 months prior to the filing of the petition his acts and conduct point to his intention to abide by his original agreement. He showed no interest in Tracy. Knowing her whereabouts he did not personally communicate with her or the Andersons; he sent no money for her support and made no effort prior to his appearance in this case to stop adoption proceedings. Upon being notified by respondents' lawyer in March, 1956, of their intention to file abandonment proceedings he made no effort to personally communicate with them, their lawyer or the child. That he intended during the crucial period to comply with the agreement to relinquish the child is clear from the record.

Ila retrieved Christine within a few days after her reconciliation with Donald. Her intention to permit Donald's arrangement for the relinquishment of Tracy to stand is borne out by her statement to Florence that she could not part with Christine but did not want Tracy. Her general attitude concerning Tracy is reflected in her prior statement to Florence that she wanted someone else to care for her. It wasn't until July, 1955, that she communicated with respondents presumably asking for the child's return. Anderson's reply is interesting for two reasons. First, it notified the appellants that he took Tracy with the understanding he could have her permanently and intended to keep her and, second, it establishes that sometime immediately after June 12, 1955, while Tracy and the Andersons were still in Washington, he saw appellants at a café and he told them the same thing. This matter was not further developed in the evidence but its mention in the letter is important as indicative of appellants' general attitude toward Tracy. Knowing at a time when the child was still available to them in Washington that Anderson intended to keep her permanently they did nothing to

regain her custody. The trial court not only rejected Ila's testimony that she communicated further with the Andersons and Tracy in New Jersey and talked with juvenile authorities and a lawyer, but much of the testimony given by both appellants. However, even from appellants' own testimony it is apparent that they were not interested in taking the child at any real expense or effort to themselves. Having been advised by Anderson at the café and again by his letter of July 30, 1955, that he would not willingly give up Tracy, appellants made no effort to retrieve the child even though Donald was employed, was buying a home and had legal advice available to him.

Their conduct upon receipt of Mr. Blumberg's letter is further evidence of their lack of interest in Tracy. They knew from his first letter of March 20, 1956, that the child was in Long Beach and that they could have obtained information from him regarding her status and whereabouts, yet they made no reply to it or to counsel's two subsequent communications. Ila did not answer the letter of May 3, 1956, because she "didn't want to." The trial judge discarded their testimony concerning their later attempts to obtain a lawyer and their inability to hire a detective because the lawyer lost the fee they gave him.

On the issue of support it is conceded that after June 12, 1955, appellants sent no money or other property for the support of Tracy. During this time they knew her whereabouts in New Jersey and had the ability to locate her while in Long Beach through respondents' forwarding address and their counsel. Had they desired they could have sent funds for the child's support commensurate with their income which was sufficient to permit them to buy a home. Any argument that appellants satisfied the support requirement under section 701 subdivision (a) of the Welfare and Institutions Code by making arrangements with the Andersons for them to feed and clothe Tracy is wholly without merit. When Donald made the arrangement with respondents he intended to transfer her custody permanently. A custody arrangement with relatives, with or without support provisions, on a temporary basis only might under some circumstances satisfy the requirement of the code section but the agreement in the instant case was intended to be of a permanent nature and to entirely relieve the natural parents of the obligation of further support.

This case is one in which the conflict of evidence rule well applies. The trial judge had the opportunity to observe the

conduct and demeanor of the witnesses on the stand and in court, to listen to their testimony, to evaluate their credibility and to weigh the evidence and resolve any conflicts therein. The trial court was far better able to reconcile the conflicts and discrepancies in the testimony of the parties than we. The trial judge's conclusion that when Donald gave Tracy to the Andersons on June 12, 1955, he intended to permanently abandon her to them, and since then during the crucial period has done nothing to show a contrary intention, is a fair and reasonable one supported by substantial evidence in the record. As well supported is his further conclusion that Ila's conduct constituted much more than mere acquiescence to Donald's arrangement and that for the period in question her acts and omissions reflected her intent to abandon the child to respondents by leaving her where she was. In our opinion the statutory presumption and the evidence, including the reasonable inferences therefrom, sustain the finding that an abandonment by both parents did in fact take place.

The next point raised by appellants concerns the judge's exercise of the discretion afforded to the trial court under the 1955 amendment to section 701 subdivision (a) of the Welfare and Institutions Code. The amendment provides: ''If in the opinion of the court the evidence indicates that either or both parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents.''

Appellants urge that the trial court abused its discretion in finding that with intent to abandon her they made only token communication regarding the child and that the evidence was insufficient to justify such a finding.

Prior to 1955 the Supreme Court held that if either parent made any communication with the child during the year preceding commencement of the action the court would have no right to declare him to be free from the custody and control of the parents (*In re Edwards,* 208 Cal. 725 [284 P. 916]). To avoid situations in which only a token communication would preclude a finding of abandonment our Legislature, in amending section 701, subdivision (a), gave the trial court a broad discretion in the matter if in its opinion the evidence indicates that either or both parties have made only token efforts to support or communicate with the child. However, before the court may exercise its discretion it must make a determination from the facts whether the support or com-

munication is of a token nature. There is here no issue of token support because the trial court made a finding supported by substantial evidence that the parents made no provision for the support of the child. The problem here is whether the court's finding that the parents made only token communication regarding the child was justified by the evidence. In so finding, the court no doubt had in mind the letter written by Ila to Anderson in July, 1955, in which she told him she "wanted Tracy back." The judge clearly declined to accept appellants' testimony regarding other purported communication concerning, and efforts to locate, the child. This the court had a right to do and it further had a right to construe Ila's letter in the light of the appellants' prior and subsequent conduct. Whereas the letter standing alone might be construed as having been written with the purpose of actually regaining the custody of the child, there is little if anything in the record to show that this was in fact Ila's true intention. The acts and omissions of both parties subsequent to June 12, 1955, reasonably justify the inference that in writing the letter Ila made only a gesture, a token demand, with no real intention of following it up to regain custody of the child if Anderson would not voluntarily return her and if it required any money or effort on appellants' part to regain Tracy.

It is obvious from the record that after receiving Anderson's communication of July 30, 1955, they were satisfied to leave her where she was under the original agreement. The trial court was not impressed with the appellants' good faith in sending the letter. Implicit in the court's finding is the conclusion of the trier of the fact that the letter actually was not what it purported to be on its face and at most was only a gesture with no other implication if the Andersons would not return the child.

The amendment to section 701, subdivision (a) of the Welfare and Institutions Code makes it clear that no longer is the court precluded from a finding of abandonment if a communication by either parent has been received during the crucial period. If in the trial court's opinion the communication in question was of a token nature only, then the court may exercise its discretion in the matter of declaring the child abandoned. There is substantial evidence here to justify such a finding and no abuse of the court's discretion is manifest in the record.

Returning to appellants' first contention arising out of the

trial court's order denying their motion for nonsuit, it is well settled that an order denying a motion for nonsuit is not appealable although it may be reviewed on the appeal from the judgment (*Leavens* v. *Pinkham & McKevitt,* 164 Cal. 242 [128 P. 399]).

What we have said in reviewing the appeal from the judgment sufficiently disposes of the point made in connection with the denial of motion for nonsuit. The attempted appeal from this order is dismissed.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied June 16, 1958, and appellants' petition for a hearing by the Supreme Court was denied July 16, 1958.