Filed 8/27/20  Adoption of K.S. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| Adoption of K.S., a Minor. | C090528 |
| | |
| O.S. et al., | (Super. Ct. No. 18CVSA006156) |
| Petitioners and Respondents, | |
| v. | |
| H.M., | |
| Objector and Appellant; | |
| D.S., | |
| Respondent. | |

H.M. (mother), the biological mother of K.S., a minor, appeals from a judgment terminating her parental rights and declaring the minor free from her parental control. (Fam. Code, § 7822 et seq.; unless stated otherwise, statutory references that follow are to the Family Code.)  Mother contends the judgment must be reversed because, in her view, the evidence was insufficient to support the trial court's finding she abandoned the minor

1

within the meaning of section 7822 and because the record does not reflect the court considered whether to appoint counsel for the minor. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are taken from the paternal grandparents' petition to declare the minor free from parental custody, the court appointed investigator's report, the reports from the California Department of Social Services, and the paternal grandparents' testimony. Neither mother, nor the minor's biological father, presented any evidence in the trial court.

The minor was born in 2007 to mother and D.S., her biological father (father, collectively parents). Mother and father dated intermittently for six years but were never married. Both mother and father have criminal histories and have been addicted to illegal drugs for many years. Mother also has mental health issues.

The minor had " 'bounced' " between mother and father amidst child welfare referrals and custody battles, until she began living with her maternal grandfather and paternal grandparents in a shared living arrangement. The paternal grandparents filed for guardianship at the request of the minor and assumed fulltime custody of the minor when they were granted temporary guardianship on December 9, 2018. Neither mother nor father participated in, or appeared in court for, the guardianship hearings, and neither parent ever sought to overturn the guardianship. As part of the guardianship order, the court also ordered both parents to maintain contact with Family Court Services and complete (and show proof thereof) specified addiction and dependency services.[1] Neither parent complied.

---

[1] Specifically, mother was ordered to complete a 12-month drug and alcohol program, attend a 90-day residential drug treatment program, and drug test at her own expense. Mother was further ordered to attend a parenting program and to sign releases allowing Family Court Services and Shasta County Child Protective Services to access her mental health information.

The letters of guardianship provided the parents visitation rights at the discretion of the paternal grandparents. Nonetheless, father never called to speak to the minor and never requested visits. He visited the minor four times in 2017 and once in 2018, but each visit was facilitated by the paternal grandparents. He has not had, or made any attempt to have, any contact with the minor since September 2018, and the last gift he has given the minor was a Christmas gift in 2017. He never provided any support for the minor.

Mother's efforts at contact were also minimal. She visited the minor only a handful of times after the guardship—each visit supervised at the paternal grandparents' home. The paternal grandparents described mother's visits as "out of the blue" and stated she was always late. She visited the minor three times in 2017—the last visit being on December 23, 2017. She has not visited, nor requested a visit, since December 2017. Mother also called the minor for her birthday in July 2017. Mother attempted to call the minor for her birthday in July 2018, but the paternal grandmother would not permit her to speak with the minor because mother was under the influence of heroin at the time. Mother has not called or attempted to contact the minor in any way since July 2018. Mother never sent the minor any cards or letters and, like father, the last gift she has given was a Christmas gift, in 2017. She never provided any support for the minor.

At the request, and with the consent, of the minor, the paternal grandparents filed a petition to declare the minor free from parental custody and terminate parental rights, with a supporting declaration on February 28, 2019. The paternal grandparents sought to adopt the minor, who calls them "mom" and "dad," and provide the minor with the stability and permanency the minor wants and needs.

Several months before filing the petition seeking termination of parental rights, the paternal grandmother attempted to contact mother about the adoption. Mother did not return the contact. The adoptions specialist at California Department of Social Services also attempted to contact the parents. Father did not return her detailed message and

3

request for a return call. The adoptions specialist was unable to leave a voicemail for mother and mother did not complete the declaration of mother form.

The court appointed investigator also attempted to contact the parents. She sent father messages by telephone, social media, and mail. The person answering the telephone told her she had the wrong number, the mail was returned with no forwarding address, and she got no response from social media. The investigator sent mother a letter at the maternal grandfather's address and attempted contact through social media. She got no response to either effort. Mother's friend told the investigator she would send mother a text message instructing mother to contact the investigator's office. Mother did not contact the office, so the friend provided the investigator with mother's current cell phone number. The investigator called the number and an individual named "Michelle" answered the call and reported that mother was at the store and would return the call as soon as she returned. Mother did not return the call and did not answer subsequent calls placed by the investigator to her number. The maternal grandfather also requested mother call the investigator, to no avail. The adoptions specialist and the court appointed investigator both supported the paternal grandparents' petition seeking to terminate parental rights and adopt the minor.

Mother appeared at the May 15, 2019 hearing on the petition. Father did not appear. Mother was appointed counsel and the matter was continued to June 5, 2019, for confirmation of counsel. Mother was ordered to submit to a drug test. Mother also appeared, with counsel, at the June 5, 2019 hearing. Mother had not drug tested and claimed she thought she had to drug test only when she was going to see the minor. The court "clarif[ied]" that mother was ordered to take the drug test at the previous hearing. The hearing was continued to July 22, 2019, for an estimated two-and-a-half-hour hearing.

Mother did not appear at the July 22, 2019 hearing, although her counsel was present. The paternal grandparents testified briefly, answering questions from the court

4

and mother's counsel. At the conclusion of the hearing, the court granted the petition, finding mother had not contacted the minor since December 2017 and specifically found mother's attempted telephone call in July 2018 to have been a "token contact." The court found father had no contact with the minor since September 2018. The court further found neither parent had provided support since December 2016 and that the parents had abandoned the minor within the meaning of section 7822. Mother's and father's parental rights were terminated. The court's written order was filed on July 25, 2019. Mother filed a timely appeal on September 23, 2019.

DISCUSSION

I

*Substantial Evidence of Abandonment*

Mother contends there is insufficient evidence to support the trial court's findings that she "left" the minor in the paternal grandparents' care and custody and intended to abandon the child within the meaning of section 7822, subdivision (a)(2). We disagree.

A proceeding to free a child from the custody and control of a parent may be brought when "[t]he child has been left by both parents or the sole parent in the care and custody of another person for a period of six months without any provision for the child's support, or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child." (§ 7822, subd. (a)(2).) Proof of an "intent to abandon for the statutory period," rather than permanently, suffices. (*In re Daniel M.* (1993) 16 Cal.App.4th 878, 886.)

The failure to communicate with a child is presumptive evidence of an intent to abandon. (§ 7822, subd. (b).) To overcome the statutory presumption, the parent must make more than token efforts to support or communicate with the child. (*Ibid*.) In determining a parent's intent to abandon, the court may take into consideration the frequency of a parent's efforts to communicate with the child, the genuineness of the

5

effort under all the circumstances, and the quality of the communication that occurs. (*In re B.J.B.* (1986) 185 Cal.App.3d 1201, 1212.)

In reviewing the trial court's findings under section 7822, we apply the substantial evidence standard of review. (*In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 503 (*Marriage of Jill*).) We do not pass on the credibility of witnesses, resolve conflicts in the evidence, or determine the weight of the evidence, but simply determine whether there is substantial evidence, believed by the trial court, that supports the court's findings. (*Ibid.*) " 'The questions of abandonment and of intent . . . , including the issue of whether the statutory presumption has been overcome satisfactorily, are questions of fact for the resolution of the trial court.' " (*Id.* at p. 506.) " 'The appellant has the burden of showing the finding or order is not supported by substantial evidence.' [Citation.]" (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1011.)

"In determining the threshold issue of whether a parent has 'left' . . . her child, the focus of the law is 'on the voluntary nature of a parent's abandonment of the parental role rather than on *physical* desertion by the parent.' [Citations.] [¶] Thus, this court has held that a parent will not be found to have voluntarily left a child in the care and custody of another where the child is effectively 'taken' from the parent by court order [citation]; *however, the parent's later voluntary inaction may constitute a leaving with intent to abandon the child* [citation]." (*Marriage of Jill, supra*, 185 Cal.App.4th at p. 504, italics added.)

Here, there is no dispute the minor was removed from parental custody by a judicial decree in 2016 and has remained in the paternal grandparents' custody and care since that time. However, the evidence amply demonstrates that, despite such court intervention, mother "left" the minor within the meaning of section 7822 by her own, voluntary inaction.

Mother was permitted postguardianship supervised visitation with the minor and participated in some visits in 2017. She did not, however, attempt to have any visits with

the minor after December 2017. The paternal grandparents had the same telephone number throughout the guardianship and mother knew where they live. Nonetheless, mother made only one attempted telephone call, while noticeably under the influence of heroin, around the minor's birthday in July 2018 and, since then, made no attempts at any contact at all. She did not send the minor cards or letters and did not provide any support. Mother did not testify or put on any evidence that she did not intend to abandon the minor to overcome the presumption.

Mother argues her failure to contact the minor after July 2018 was not a result of voluntary inaction because she "believed that she needed to drug test clean if she wanted to see [the minor]." There is simply no evidence in the record to support this conjecture. Not only was there no evidence that mother believed she had to test clean in order to call or visit the minor during the guardianship, there was no evidence to support such a belief. For example, there was no evidence mother drug tested prior to her 2017 visits. Nor was there any evidence the paternal grandparents told her she had to drug test prior to calls or visits. In fact, the paternal grandfather testified that "[t]he only rule we have with [mother] about contacting [the minor] is we know where she's at and a phone number if she'd like to have contact." The paternal grandfather then added that "[mother's] always had the opportunity to come by, have supervised visitation at any time. That was her choice not to do that."

The only evidence in the record regarding mother's belief about drug testing was her statement to the court that she had not drug tested after the May 15, 2019 hearing, as ordered by the court, because she thought the drug test was only when she was going to see the minor; and the court clarified that she had, in fact, been ordered to test at the May 15, 2019 hearing. This is not evidence of mother's beliefs regarding a precontact testing requirement during the guardianship.

Moreover, mother acknowledges that sending letters, cards, and gifts, may also be considered by the court when determining the frequency of a parent's efforts to

7

communicate with the child, the genuineness of the effort, and the quality of the communication. (See *In re Cattalini* (1946) 72 Cal.App.2d 662, 667-668.) Nonetheless, mother has offered no excuse as to why she did not communicate with the minor in these ways, even if she *did* believe she had to drug test clean prior to visits.

Citing *In re H.D.* (2019) 35 Cal.App.5th 42, mother argues that her failure to contact the minor between July 2018 and the hearing did not show she intended to abandon the minor because she was working to treat her addiction at that time. In that case, the children had been placed in the father's temporary sole custody due to the mother's substance abuse. (*Id.* at pp. 45-46.) The mother attempted to contact the children several times after the custody order but the father, in protection of the children's interests, prohibited all contact. (*Id.* at p. 46.) The mother then spent a year in rehabilitation, after which she filed a request to modify the custody order. (*Ibid.*) The children's stepmother filed petitions to free the children from the mother's custody and control under section 7822 so she could adopt them, alleging the mother had not been in contact with the children for more than a year. (*In re H.D.*, at pp. 46-47.) The court held that, because the father had prevented the mother from contacting the children, the mother's failure to maintain contact with them was not evidence of her intent to abandon them. (*Id.* at pp. 52-53.) *In re H.D.* is inapposite.

First, unlike the mother in *In re H.D.*, mother failed to show she was working to treat her addiction during that time, so as to permit an inference that this, not abandonment of the minor, was her intent at the time. Although she had been ordered to drug test and participate in addiction treatment, mother did not provide any evidence of her sobriety, her participation in a drug treatment program, or repeated refused attempts to contact the minor. The only evidence in the record of any attempt by mother to address her addiction is a reference from a process server, who indicated mother replied to a social media contact on March 15, 2019, and claimed she was in Oregon in a

8

rehabilitation center and would call the process server when she returned to Redding, California.

Additionally, unlike the mother in *In re H.D.*, mother has not shown she was prohibited from contacting the minor or that she has been in a rehabilitation program throughout all or most of the statutory timeframe. Mother was permitted card and letter contact, supervised in-person contact, and telephone contact. She was prevented from speaking to the minor on only a single occasion, when she called while noticeably under the influence of heroin. Unlike *In re H.D.*, this is not a case of mother being *unable* to contact the minor. Mother was permitted contact with the minor and simply chose not to exercise that privilege. The evidence, as we have recited, amply supports the trial court's finding that mother had not contacted the minor for well over the statutory timeframe, with the intent to abandon the minor.

Finally, mother points out that where a parent has an inability to support, the presumption of an intent to abandon arising from the failure to provide support is dispelled. (*In re Cattalini, supra*, 72 Cal.App.2d at p. 667.) In this respect, she argues the paternal grandparents did not prove she had the financial ability to provide support so as to render her failure to provide support evidence of her intent to abandon. With no authority for so doing, mother appears to place the burden on the petitioners to provide evidence disproving the existence of a fact which might dispel the presumption in their favor. If mother wished to dispel the presumption, it was incumbent upon her to present evidence of her financial inability to provide support. (Evid. Code, § 604; *In re Aubrey T.* (2020) 48 Cal.App.5th 316, 327; see also *In re Gano* (1958) 160 Cal.App.2d 700, 706.) She did not. In any event, mother's failure to communicate with the minor was sufficient, without consideration of her additional failure to provide support, to find an intent to abandon.

## II

### *Appointment of Counsel for Minor*

Mother also contends the court's order terminating her parental rights must be reversed because there is no evidence in the record that the court considered whether it would be in the minor's best interests to appoint her counsel. While mother correctly notes that section 7861 requires the court "consider whether the interests of the child require the appointment of counsel" in section 7822 cases seeking termination of parental rights, and there is no indication in the record that the court considered the matter, we find the error of the court failing to do so in this case harmless.

"Statutes authorizing an action to free a child from parental custody and control are intended foremost to protect the child. (*In re Sherman M.* (1974) 39 Cal.App.3d 40, 45.) Typically, such statutes are invoked for the purpose of terminating the rights of one or more biological parent, so the child may be adopted into a stable home environment. (See § 7800 ['The purpose of this part is to serve the welfare and best interest of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from the child's life']; *In re Daniel M.* (1993) 16 Cal.App.4th 878, 883-884 (*Daniel M.*).) In any event, the best interests of the child are paramount in interpreting and implementing the statutory scheme. (See *Daniel M., supra*, at pp. 883-884.) Indeed, our Legislature has declared that the statutory scheme 'shall be liberally construed to serve and protect the interests and welfare of the child.' (§ 7801.) It further directs that the trial court '*shall* consider the wishes of the child, bearing in mind the age of the child, and *shall* act in the best interest of the child.' (§ 7890, italics added.)" (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 162-163 (*Neumann*).)

At the commencement of a proceeding on a petition to free a child from parental custody and control, section 7860 provides that "counsel shall be appointed as provided in this article." Under section 7861, "[t]he court *shall consider* whether the interests of the child require the appointment of counsel. If the court finds that the interests of the

child require representation by counsel, the court shall appoint counsel to represent the child, whether or not the child is able to afford counsel." (Italics added.) Construing the statutory predecessor to section 7861, the California Supreme Court held that "in absence of a showing on the issue of the need for independent counsel for a minor, failure to appoint constitutes error." (*In re Richard E.* (1978) 21 Cal.3d 349, 354.) Nonetheless, the "failure to appoint counsel for a minor in a freedom from parental custody and control proceeding does not require reversal of the judgment in the absence of miscarriage of justice." (*Id.* at p. 355; see also *In re Mario C.* (1990) 226 Cal.App.3d 599, 606.) Counsel need be appointed for the children only if the trial court, in its discretion, determines that their interests are not satisfactorily represented during the adjudication of the other issues. (*Richard. E.*, at p. 354.)

"[I]n proceedings to free a child from parental custody and control, typically each side asserts it is protecting the best interests of the child and, in the process, the court becomes fully advised of matters affecting the child's best interests." (*Neumann, supra*, 121 Cal.App.4th at p. 170.) Here, the court appointed investigator provided a lengthy and detailed report to the court, outlining the family's past and current circumstances, as well as the 11-year-old minor's feelings on the subject of adoption and termination of parental rights. The state adoptions specialist also provided a report to the court and the paternal grandparents were subjected to cross-examination by mother's counsel at the hearing. The court was fully advised of the matters affecting the minor's interests.

Mother argues there was some evidence the paternal grandparents were restricting the minor's relationship with the maternal grandfather, which mother argues may not have been in the minor's best interests. As mother acknowledges, this information was presented to the trial court for consideration and, in fact, was fleshed out upon questioning by mother's counsel at the hearing. Minor's lack of separate counsel did not result in prejudice in this regard.

11

Mother also argues there was evidence the minor did not understand the impact of adoption and, without counsel, did not make an informed choice that adoption was her preference. She argues the minor needed counsel so the impact and consequences of adoption could be communicated to the minor in an age appropriate way. She argues evidence of the minor's misunderstanding is reflected in the minor's statement to the court appointed investigator, made after noting that she had last seen mother in December 2017 and that her parents never call her, that she wished parents would stop doing drugs for the rest of her life, that her birth parents would be back together, or even if they did not, that they would "all get along and be family again." In light of the fact that the minor is being adopted by her paternal grandparents and has an ongoing relationship with the maternal extended family members, mother's construction of the minor's comments is tenuous, at best. In any event, the investigator stated that she had a private interview with the minor and explained the nature of the proceedings to her, and expressly stated that the minor "has a good understanding of the meaning of adoption." Thus, appointment of separate counsel for the minor for this purpose was not necessary.

The central issue in this case was whether parents had left the minor without any provision for support, or without communication, with the intent to abandon the child since they had ceased contact in 2017. It was not a close case and it was properly determined by the trial court. (See *In re Sarah H.* (1980) 106 Cal.App.3d 326, 330.) There was no miscarriage of justice in the failure to consider appointing separate counsel for the minor. (*In re Richard E., supra*, 21 Cal.3d at p. 355.)

## DISPOSITION

The judgment (terminating parental rights) is affirmed.


                                                /s/
                                           RAYE, P. J.


We concur:


     /s/
ROBIE, J.


     /s/
MAURO, J.